SPAULDING ET AL. *v.* MOTT ET AL.

[No. 20,572. Filed January 26, 1906. Rehearing denied June 21, 1906.]

1. HIGHWAYS.—*Gravel Roads.*—*Within Two Miles of County Line.*—*Taxing Districts.*—*Statutes.*—The manner of giving notice of the filing of a petition, the time and place of hearing, the report of the viewers and procedure outlined, clearly indi-

cate that the gravel road act of 1903 (Acts 1903, p. 255) did not create a taxing district composed of lands in separate counties.  p. 62.

2.  HIGHWAYS.—*Gravel Roads.—Statutes.—Construction.—Prior Statutes.*—In construing the gravel road act of 1903 (Acts 1903, p. 255) the courts will give weight to the fact that the similar act of 1877 (Acts 1877, p. 82) was uniformly construed and enforced by the proper officers as authorizing the construction of gravel roads up to the county lines without any attempt to assess the lands in the adjoining county within the statutory limit for the taxing district.  p. 62.

3.  SAME.—*Gravel Roads.—Prior Statutes.—Construction.—Presumptions.*—The presumption is that in passing the gravel road act of 1903 (Acts 1903, p. 255) the legislature had in mind the construction placed upon the prior, similar statute of 1877 (Acts 1877, p. 82), which authorized such roads to be built up to the county lines without attempting to assess lands in the adjoining county within the statutory limit for the taxing district.  p. 64.

4.  SAME.—*Gravel Roads.—Taxing Districts.—Statutes.*—The fact that the gravel road act of 1877 (Acts 1877, p. 82) provided that no such road should be constructed unless a majority in number of owners and the owners of a majority in acreage of the lands assessable should petition therefor, and the gravel road act of 1903 (Acts 1903, p. 255) provides that it shall only be necessary for a majority of the abutters so to sign, does not show a legislative intent to change the method of fixing the taxing districts therefor.  p. 64.

5.  SAME.—*Gravel Roads.—Taxing Districts.*—The gravel road act of 1865 (Acts 1865, p. 90), providing for a taxing district three-fourths of a mile distant from the proposed road, outside of the corporate limits of towns and cities, the assessments to be made on the valuation in the auditor's books, did not extend such taxing district across county lines, though the road might be nearer the county line than three-fourths of a mile.  p. 65.

6.  CONSTITUTIONAL LAW.—*Gravel Roads.—Taxing Districts.—Special Privileges.—Class Legislation.*—The gravel road act of 1903 (Acts 1903, p. 255), providing that taxing districts for the construction of such roads shall extend two miles from such improvement, is not unconstitutional as against article 1, §23, of the bill of rights, providing for equality of privileges for all citizens, because it may compel persons living close to the boundaries of counties to pay a greater share in the construction of such gravel roads built near county lines.  p. 66.

7. CONSTITUTIONAL LAW.—*Public Improvements.*—*Taxing Districts.*—*Legislative Discretion.*—The legislature has a discretionary power to fix the boundaries of the districts to be taxed for the cost of public improvements located therein.   p. 67.

8. PLEADING.—*Plea in Abatement.*—*Insufficient.*—*Demurrer.*— *Defective.*—A bad demurrer is good enough for a bad plea in abatement.   p. 67.

9. JUDGMENT.—*Validity.*—*Highways.*—*Width.*—A judgment of the board of commissioners establishing a gravel road, but not stating the width thereof, is not void, where such judgment approves and makes a part thereof a viewers' report which does state such width.   p. 68.

10. SAME.—*Validity.*—*Highways.*—*Gravel Roads.*—*Taxing Districts.*—*Failure to Assess Part of Lands.*—A failure to assess all of the lands in a gravel road taxing district for the cost thereof does not render void the judgment establishing same, since the statute (Acts 1903, p. 255, §§2, 3) requires only that the lands benefited shall be assessed. *Greensburgh, etc., Turnpike Co.* v. *Sidener,* 40 Ind. 424, distinguished.   p. 68.

11. HIGHWAYS. — *Gravel Roads.* — *Width.* — *Viewers' Report.*— *Statutes.*—A failure of the viewers' report to show the necessity for the widening of a public highway to make a gravel road thereof under the act of 1903 (Acts 1903, p. 255) does not prevent the board of commissioners from widening same, the statute making no provision requiring the viewers to report on such fact. *Gipson* v. *Heath,* 98 Ind. 100, and *Crow* v. *Judy,* 139 Ind. 562, distinguished.   p. 70.

12. SAME.—*Gravel Roads.*—*Widening.*—*Procedure.*—The gravel road act of 1903 (Acts 1903, p. 255) requires the viewers first to determine whether a highway shall be widened or laid out on new ground and then that the board of commissioners shall finally settle such question.   p. 71.

13. SAME.—*Gravel Roads.*—*Public Utility.*—*Appeal.*—Under the gravel road act of 1903 (Acts 1903, p. 255, §14) the decision of the board of commissioners that a proposed gravel road is of public utility is final; and an appeal to the circuit court cannot put such question in issue in such court.   p. 71.

14. SAME.—*Gravel Roads.*—*Widening.*—*Evidence.*—*Sufficiency. —Exclusion on Appellant's Motion.*—*Estoppel.*—Appellant is estopped to question the jury's finding of a certain fact, when upon his motion the adverse party's material evidence thereof was improperly excluded.   p. 71.

15. APPEAL AND ERROR.—*Evidence.*—*Exclusion.*—*Objection.*— *Changing Grounds of, on Appeal.*—An objection, on appeal,

that the form of an excluded question was bad, will not be heard, where the only objection below was that such evidence "was not material." p. 72.

16. PLEADING.—*Motions.—Venire de Novo.—*A motion for a *venire de novo* cannot be sustained unless the verdict, general or special, is so defective that the court cannot understand it. p. 72.

17. SAME. — *Motions. — Venire de Novo. — Interrogatories to Jury.—*On a motion for a *venire de novo* a party cannot raise any question on the interrogatories to the jury, where such motion applied to the general verdict alone. p. 72.

From Tipton Circuit Court; *James F. Elliott,* Judge.

Gravel road proceedings by Asa E. Mott and others, against which Allen F. Spaulding and others remonstrate. From an order establishing such road, remonstrants appeal. *Affirmed.*

*Oglebay & Oglebay,* for appellants.

*Beauchamp, Mount & Procter* and *Coleman & Carter,* for appellees.

MONKS, J.—This proceeding was brought by appellees before the Board of Commissioners of the County of Tipton at the June term, 1904, of the said board, under the act of 1903 (Acts 1903, p. 255) to improve by grading, draining and graveling a public highway in said county which runs parallel with the west line of said county and one-fourth of a mile therefrom. Appellants appeared and filed separate remonstrances, and such proceedings were had that the board ordered the improvement to be made. On appeal to the court below certain assessments were modified and damages were allowed to two of the remonstrants. The controlling question in this case is the proper construction of said act of 1903. The board of commissioners and the court below held that under said act the taxing district was confined to Tipton county, and that no lands in Clinton and Howard counties could be assessed with benefits, although within two miles of the highway to be improved.

Appellants insist that (1) "the taxing district extends two miles from the highway improved, regardless of county lines; (2) that if it does not, no highway can be improved under said act of 1903, if any part of it is less than two miles from a county line, because all the lands within two miles, if benefited, must be assessed with benefits under said act; (3) if the construction given said law by the court below is correct, it is special and class legislation, for the reason that in one part of the county all the lands within two miles of the highway to be improved must be assessed, if benefited, while in another part of the county only part of the land within two miles of the improvement which is benefited can be assessed with benefits, thus giving the citizens of one portion of the county the advantage over those residing in another part of the county."

If appellants' construction of said act of 1903, as to the taxing district is correct, then no highway, any part of which is less than two miles from the state line, could be improved thereunder, because the legislature could not authorize the assessing of lands in another state, even if benefited and within two miles of the proposed improvement. And under appellants' contention any law would be unconstitutional which attempts to authorize the improvement of a highway so near the state line that the taxing district is thereby reduced at either end or on either side.

The manner of giving notice of the filing of the petition and of time and place of hearing the report of the viewers, as well as the procedure under said act, clearly indicate that it was the legislative intent that the taxing district should not include any lands outside the county in which the highway to be improved is located.

There is another reason for the conclusion that this was the legislative intent in the enactment of the act of 1903. The act of 1877 (Acts 1877, p. 82) provides for the construction of gravel roads by the assessment of benefits on the lands benefited within two miles

of the highway to be improved, but, like the act of 1903, in controversy here, there is no express provision limiting the taxing district to the county in which the highway to be improved is located. Said act of 1877 has been, since it took effect—a period of more than twenty-eight years— uniformly construed and enforced · by the officers acting under its provision, without question, as authorizing the improvement of highways within less than two miles of the county line, and as limiting the taxing district to the county in which the proceedings were pending before the board of commissioners.

In *State Board, etc., v. Holliday* (1898), 150 Ind. 216, 42 L. R. A. 826, this court said on page 229: "Black, Interp. of Laws, p. 221, says: 'The executive and administrative officers of the government are bound to give effect to the laws which regulate their duties and define the sphere of their activities, and, in so doing, they must necessarily put their own construction upon such acts. When the courts shall have interpreted the laws, these officers are of course bound to accept and abide by their decisions. But in advance of such judicial construction, they must interpret the statutes for themselves, and to the best of their own abilities. * * * But it is a rule, announced by the Supreme Court of the United States, at an early day, and which has since been followed in numerous cases both in the federal and state courts, that the contemporaneous construction of a statute by the officers who have been called upon to carry it into effect, made the basis of their constant and uniform practice for a long period of time, and generally acquiesced in, and not questioned by any suit brought, or any public or private action instituted, to test and settle the construction in the courts, is entitled to great respect, and if the statute is doubtful or ambiguous such practical construction ought to be accepted as in accordance with the true meaning of the law, unless there are very cogent and persuasive reasons for departing from it.' To

the same effect is Cooley, Const. Lim. (6th ed.), 51-58."
See, also, *City of Terre Haute* v. *Evansville, etc., R. Co.*
(1897), 149 Ind. 174, 186, 37 L. R. A. 189, and cases
cited; *City of Indianapolis* v. *Navin* (1898), 151 Ind.
139, 147, 41 L. R. A. 337, and cases cited.

Sutherland, Stat. Constr., §311, says: "The contemporary and subsequent action of the legislature in reference to the subject-matter has been accepted as controlling evidence of the intention of a particular act." The same author (§333) says: "It is presumed that the legislature is acquainted with the law; that it has a knowledge of the state of it upon the subjects upon which it legislates; that it is informed of previous legislation and the construction it has received." The presumption is that the legislature knew of said construction of the act of 1877 when they passed the act of 1903. *State Board, etc.,* v. *Holliday, supra,* pages 233, 234, and authorities cited. It is also said in Sutherland, Stat. Constr., §333: "If it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effectuate that intention." The provisions of the act of 1903, *supra,* so far as concerns the taxing district, are substantially the same as those in the act of 1877, *supra,* and no words used in said act show any intention to change the construction from that given to the act of 1877. The fact that the law of 1877 (§6859 Burns 1901, §5095 R. S. 1881) provides that the board of commissioners shall not make the order that the improvement be made "until a majority of the resident landholders of the county whose lands are reported as benefited and ought to be assessed, and also the owners of a majority of the whole number of acres of all lands that are reported as benefited and ought to be assessed," while section two of the act of 1903 contains no such provision, but only requires that the petition be "signed by a majority of the resident landholders of the

county whose lands abut upon the proposed improvement," does not show a legislative intent that the taxing district provided in the act of 1903 should be in any way different from what it was under the act of 1877.

Appellants cite *Crist* v. *State, ex rel.* (1884), 97 Ind. 389, and *State, ex rel.,* v. *Elliott* (1904), 32 Ind. App. 605; which hold that under certain drainage laws where a ditch is constructed in one county, land located in another county receiving special benefits from the construction of said ditch may be assessed with such benefits, as sustaining their contention in this case. Said acts provide for the construction of a drain extending into two or more counties as a unit. throughout its whole extent and under one authority, and authorize the assessment of all the lands in said counties benefited by said ditch, while under the act of 1903, if the highway to be improved extends into more than one county, the same must be improved in each county by separate and independent proceedings, neither depending in any manner upon the other. Acts 1903, p. 255, §18. The authorities cited are not in point here. Thus construed as to taxing districts we do not think said act unconstitutional.

The act of 1865 (Acts 1865, p. 90) provided that for the construction of a gravel road "all real estate outside of the corporate limits of any town or city incorporated as such, three-fourths of a mile each side of the proposed road, shall be taxed to construct the said road in proportion to the appraisement of the realty that may be on the auditor's books," and that each owner shall pay his proportion of the cost of the proposed turnpike according to the amount of the assessment of the real estate within the prescribed limits. It will be observed that under this law the taxing district did not include any land at the ends of the proposed road, even if the same were benefited as much as or more than lands in the taxing district which could not be

taxed therefor. It is evident that, if a highway to be improved under said act was less than three-fourths of a mile from the county line, no tax could be levied on land in the adjoining county, although within three-quarters of a mile of the improvement, and specially benefited thereby. In other words, the taxing district under said act could in no case extend beyond the county line, although the improvement was less than three-fourths of a mile therefrom.

The act of 1867 (Acts 1867, p. 167) and the act of 1869 (Acts 1869 [s. s.], p. 73) provided for the construction of gravel roads by assessment of benefits on 6. all the lands within one and one-half miles on either side or within one and one-half miles of either end of the proposed improvement, if in the county. It will be observed that said acts expressly limit the taxing district to the county in which the highway to be improved is located. It is clear that if the act of 1903, *supra,* is unconstitutional for the reason urged by appellants, that the acts of 1865, 1867, and 1869, *supra,* were unconstitutional for the same reason.

Commencing in 1865, forty years ago, the legislature has, as we have shown, repeatedly enacted laws containing the provisions which appellants claim render the act of 1903 unconstitutional. The constitutionality of these laws has never before been challenged on the ground urged by appellants, but they have been treated and enforced by all officers as valid in this respect. This practical construction upon the question raised is influential. *City of Terre Haute* v. *Evansville, etc., R. Co., supra; City of Indianapolis* v. *Navin, supra; French* v. *State* (1894), 141 Ind. 618, 628, 29 L. R. A. 113; *Hovey* v. *State, ex rel.* (1889), 119 Ind. 386; *Fall* v. *Hazelrigg* (1874), 45 Ind. 576, 585, 15 Am. Rep. 278; *State, ex rel.,* v. *McAlister* (1895), 88 Tex. 284, 31 S. W. 187, 28 L. R. A. 523; Black, Const. Law, p. 71. It is evident, however, that said act as construed concerning the taxing district operated alike in all

parts of the State under similar circumstances and conditions, and is not, therefore, either special or local (*State, ex rel.,* v. *Smith* [1902], 158 Ind. 543, 554, 555, and cases cited) ; nor does it "grant privileges or immunities to any citizen or class of citizens which upon the same terms do not belong to all citizens."

It is settled, however, as a general rule, that it is within the discretion of the legislature to determine what property, as regards its location with respect to the local improvement, shall be assessed. 1 Cooley, Taxation (3d ed.), 234-240; 2 Cooley, Taxation (3d ed.), 1180, 1207, 1208; 25 Am. and Eng. Ency. Law (2d ed.), 1189, and cases cited in notes 7, 8, 10; Elliott, Roads and Sts. (2d ed.), §§558, 560, 564; *Voris* v. *Pittsburg Plate Glass Co.* (1904), 163 Ind. 599, 606-608, and authorities cited; *Gilson* v. *Board, etc.* (1891), 128 Ind. 65, 69-74, 11 L. R. A. 835; *Board, etc.,* v. *Harrell* (1897), 147 Ind. 500, 504-507; *Lowe* v. *Board, etc.* (1901), 156 Ind. 163; *Adams* v. *City of Shelbyville* (1900), 154 Ind. 467, 478, 49 L. R. A. 797, 77 Am. St. 484; *Byram* v. *Board, etc.* (1896), 145 Ind. 240, 248-251, 33 L. R. A. 476; *Brown* v. *Miller* (1904), 162 Ind. 684, 686-687; *West Chicago Park Com.* v. *Farber* (1898), 171 Ill. 146, 49 N. E. 427, and cases cited; *Lincoln* v. *Board, etc.* (1900), 176 Mass. 210, 57 N. E. 356, and cases cited; *Dorgan* v. *City of Boston* (1866), 12 Allen 223.

Appellants insist that the court below erred in sustaining a demurrer to their plea in abatement, because the demurrer was so defective in form as to present no question.

8. The plea in abatement proceeded upon the theory that the taxing district in this case extended into Clinton and Howard counties, which theory, as we have shown, was erroneous, and said plea was insufficient for that reason. It is settled that, even if a demurrer is so defective in form as to present no question, it is not reversible error to sustain the same, if the pleading to which

it is addressed is bad. *Hanson* v. *Cruse* (1900), 155 Ind. 176, 178; *Bollman* v. *Gemmill* (1900), 155 Ind. 33, 36; *Garrett* v. *Bissell, etc., Works* (1900), 154 Ind. 319, 321, and authorities cited; *Goldsmith* v. *Chipps* (1900), 154 Ind. 28, and cases cited; *Wray* v. *Fry* (1902), 158 Ind. 92, 96.

It is next insisted by appellants that the order of the board of commissioners that the improvement be made is void, because it does not state the kind of improvement to be made, and does not state the width and extent of the same as required by section five of the act of 1903, *supra.* The report of the viewers contains the plans and specifications for said improvement and is a part of the order of the board, and said order, when so considered, states the kind of improvement to be made and the width and extent thereof. Whether said order would be void for the reason urged we need not determine, because when the report of the viewers is read as a part thereof it fully complies with the requirements of said section five.

Appellants claim that there are several tracts of land in Tipton county and in said taxing district which were benefited by said proposed improvement, but were not assessed with benefits, and that the failure to assess the same renders the proceeding void; citing *Greensburgh, etc., Turnpike Co.* v. *Sidener* (1872), 40 Ind. 424, 428, 429, and other cases which hold under Acts 1867, p. 167, §2, and Acts 1869 (s. s.), p. 73, §3, that when the assessors omitted in the list of lands returned by them any land within the taxing district "their entire assessment is void and an injunction will lie to prevent its collection." Said acts of 1867 and 1869 imperatively required the assessors "to make a list of all the lands" within the taxing district, "and to assess the amounts of benefit that will result from the proper construction and maintenance of such proposed road, and report the same to the

county auditor in writing and append thereto their affidavit that the same is correct," etc. In *Greensburgh, etc., Turn-pike Co.* v. *Sidener, supra,* this court said on page 429 : "The above statute expressly, absolutely, and imperatively requires of the assessors that they shall view all the lands and make a list of all the lands within the prescribed bounds, but the assessment of benefits does not necessarily follow the viewing and listing of all such lands. Whether the lands viewed and listed are benefited, and if so, to what extent, is a matter of judgment, to be determined by the assessors from the facts and circumstances attending and surrounding each assessment of benefits." These cases are not in point here because the act of 1903, *supra,* does not require the viewers to make "a list of all the lands in the taxing district," but section two of said act provides that "they shall upon actual view of all lands" within the tax-ing district "apportion the costs, expenses and damages upon all the lands" within the taxing district "that are benefited, according to the benefits derived therefrom." And section three of said act requires that they "make a report to the board of commissioners, and file the same with the auditor of the county, which report shall show the public utility or convenience of the proposed improvement, an estimate of the costs and expenses thereof, the damages assessed to the several tracts of lands, the benefits of each forty acres or less tract of land where such exists, and give a description of the work proposed, the grade, drains, cul-verts, kind of improvement, the commencement and ter-minus of the road." It is manifest that the viewers under said act of 1903 are not required to make and report a list of all the lands in the taxing district, but only the lands in the taxing district that are benefited or damaged. The report of the viewers states that it reports the lands that will be benefited and that no lands will be damaged by the improvement. The report of the viewers purports to contain a list of all the lands benefited by the

proposed improvement, and, if any lands benefited thereby
were omitted, the report may be corrected by amendment
at any time under section six of the act of 1903, *supra*.
It is evident that the failure of the viewers to assess all
lands in the taxing district benefited by the proposed work
does not render the proceeding void. *Bowen* v. *Hester*
(1896), 143 Ind. 511, 515-519.

The highway to be improved was thirty-three feet
wide, and the order of the board following the
viewers' report established the width thereof
at thirty-six feet. Appellants insist that under
the gravel road law of 1903, the board has
no power to widen the highway to be improved,
except it be rendered necessary for the purpose of
shortening, straightening or draining the road, which
necessity must be shown in the report of the viewers; citing
*Gipson* v. *Heath* (1884), 98 Ind. 100; *Crow* v. *Judy*
(1894), 139 Ind. 562. Said cases were under the act of
1877 (Acts 1877, p. 82), but it was not held in either of
them that the board of commissioners had no such power
unless the necessity therefor was shown by the report of the
viewers. The act of 1903 (Acts 1903, p. 255) authorized
the viewers "to examine, view, lay out or straighten such
roads as in their judgment public utility or convenience
require," and section three of said act of 1903, heretofore
set out, provides what the report of the viewers shall con-
tain. There is nothing in said section requiring the report
to contain the statement contended for by appellants.

At the request of appellants the court submitted to the
jury the following interrogatory to be answered if they
agreed upon a general verdict: "Is the widening of the
existing road to the width of thirty-six feet rendered neces-
sary in order to shorten or straighten it or for the purpose
of obtaining a better route?"—which the jury answered,
"Yes." Appellants, however, insist that there was no evi-
dence to sustain this finding. During the trial appellees

offered to prove by a witness in their behalf that it was necessary that said improvement be established at the width of thirty-six feet in order to get the proper drainage and grade for the same, but the evidence was excluded, on the objection of appellants, on the ground stated by the court that the same "was not material."

It would seem from an examination of sections 2, 3, 5, 7 and 14 of said act of 1903, that the highway to be improved is to be widened, or laid out on new ground at places, if public utility or convenience requires it. This question is first to be determined by the viewers and finally by the board of commissioners. The fifth ground of remonstrance provided by said act is "that the proposed work is not of public utility or convenience," and it is provided in section fourteen of said act that the decision of the board of commissioners, as to said fifth cause for remonstrance, "shall be final and no appeal allowed therefrom."

If the question whether public utility or convenience required the widening of said highway could not be tried in the court below because not appealable, the court's ruling that said evidence was not material was correct. But even if the question of widening said highway was before the court below for determination, appellants cannot, after the evidence was excluded as not material, on their objection, complain on the ground that there was no evidence to sustain the jury's answer to said interrogatory. This is true, because it is well settled that one on whose objection competent evidence to prove a fact is excluded cannot afterwards say that the fact was not proved. *Thompson* v. *McKay* (1871), 41 Cal. 221; *Greeley* v. *Provident Sav. Bank* (1890), 103 Mo. 212, 221; *Jobbins* v. *Gray* (1889), 34 Ill. App. 208, 219; *Insurance Co.* v. *O'Connell* (1889), 34 Ill. App. 357, 362; Elliott, App. Proc., §630, and cases cited; Bigelow, Estoppel (5th ed.), p. 720.

Appellants attempt to avoid this rule, on the ground that "the question propounded to the witness was improper in form and the objection was therefore good." The objection, however, was not to the form, but was general, and the court sustained the objection, not on account of the form of the question, but on the ground that the evidence was not material. This brings the case clearly within the rule.

Each appellant filed a motion for a *venire de novo*, on the ground that "the verdict of the jury is so defective, uncertain and ambiguous that no judgment can be rendered thereon." The rule in this State is that a motion for a *venire de novo* will not be sustained unless the verdict, whether general or special, is so defective and uncertain that no judgment can be rendered upon it. A verdict, however informal, is good if the court can understand it. The general verdict finds upon all the issues as to each appellant, and when these findings are read and construed together there is no difficulty in rendering judgment thereon.

Appellants Spaulding and Spaulding call attention to the fact that the jury, in answer to an interrogatory submitted to them, "found that the land of said Spauldings is assessed too much as compared with the land of Asa E. Mott, which is assessed with benefits, and no reduction was made in their assessment." The general verdict found in favor of appellees against said appellants Spaulding and Spaulding on all the issues between them. As their motion for a *venire de novo* only applied to the general verdict, no question was raised concerning the finding of the jury in answer to said interrogatories. The motions for a *venire de novo* were properly overruled. *Central Union Tel. Co.* v. *Fehring* (1896), 146 Ind. 189, 193.

What we have said disposes of all the questions presented by the record. Finding no reversible error, the judgment is affirmed.