## SMITH ET AL. v. BOARD OF COMMISSIONERS OF THE COUNTY OF HAMILTON ET AL.

[No. 21,304.   Filed January 25, 1910.]

1. STATUTES.—*Clerical Errors.*—"*Includes.*"—*Highways.*—The word "includes," as used in §7712 Burns 1908, Acts 1907, p. 137, providing that "whenever a petition signed by fifty or more freeholders and voters of any township in any county in this State, includes any incorporated town or city," etc., is evidently a mistake of some kind.  p. 367.

2. CONSTITUTIONAL LAW. — *Statutes.* — *Classification by Population.*—*Highways.*—*Gravel Roads.*—Section 7712 Burns 1908, Acts 1907, p. 137, providing that "whenever a petition signed by fifty or more freeholders and voters of any township in any county in this State, includes any incorporated town or city," etc., if construed to apply only to townships which contain an incorporated town or city with a population less than thirty thousand inhabitants, would violate article 4, §22 of the Constitution, forbidding the enactment of local or special laws for the laying out or improvement of highways.  p. 368.

3. STATUTES.—*Mistakes.*—"*Includes.*"—*Highways.*—The word "includes," as used in §7712 Burns 1908, Acts 1907, p. 137, providing that "whenever a petition signed by fifty or more freeholders and voters of any township in any county in this State, includes any incorporated town or city in such township having a population of less than thirty thousand inhabitants, praying," etc., was evidently used by mistake for the word "including."  Jordan and Monks, JJ., dissenting.  pp. 369, 372.

4. STATUTES.— *Doubt.— Construction.— Preference.*— Where one construction of a doubtful statute does, and another does not, render the statute invalid, the latter construction should be adopted. p. 370.

5. STATUTES.—*General.—Highways.*—The legislature has consistently intended that the benefits of the highway statutes enacted should be placed within the reach of every township within the State. p. 371.

6. CONSTITUTIONAL LAW.—*General Laws.*—A law that applies in the same way to all parts of the State, where similar conditions prevail, is a general and not a special or local law. p. 374.

7. CONSTITUTIONAL LAW.—*Local and Special.—Population.—Classification.*—Section 7712 Burns 1908, Acts 1907, p. 137, giving to the inhabitants of towns and cities of thirty thousand or less a voice in the establishment of gravel roads within their townships, and excluding cities of a greater size, is not a local or special law, but general. pp. 374, 375.

8. EVIDENCE.—*Judicial Notice.—Highways.—Needs of Urban and Rural Population.*—Courts judicially know that the same character of highways is not necessary in rural districts as in cities. p. 374.

9. HIGHWAYS.—*Property of.—Regulation.*—The public highways belong to the State and it may designate the officers to have charge thereof, and provide for the improvement thereof. p. 376.

10. HIGHWAYS.—*Taxation for.—Constitutional Law.*—Except as restricted by the Constitution, the legislature has unlimited powers of taxation for the establishment and repair of public highways. p. 376.

11. CONSTITUTIONAL LAW.—*Taxation.—Highway Bonds.*—Bonds issued for the construction of highways are based upon the theory of a return of an equal value to the taxing district, in the way of special benefits, and they do not constitute a debt of the county or township by which they are issued. p. 377.

12. HIGHWAYS.—*Taxing Districts.—Right to Designate.*—The legislature has the power to fix the limits of taxing districts for highway purposes, and may disregard county, township, or city boundary lines. p. 377.

13. HIGHWAYS.—*Gravel Roads.—Construction to Township Line.*— Under §7719 Burns 1908, Acts 1905, p. 68, §1, the board of commissioners of a county has the right, without a township vote, to order the construction of a free gravel road, less than three miles long one end of which connects with another gravel road, and the other, with a common road on the township boundary line. p. 379.

14. HIGHWAYS.— *Building by Sections.— Fraud.— Collateral Attack.*—Taxpayers cannot upon a collateral attack by way of in-

junction show that two free gravel roads constructed by the board of commissioners, without a township vote, really constituted but one road which was over three miles long, and therefore without the board's jurisdiction, except by such vote, the question being one of fraud for the board upon the hearing of such petitions. p. 380.

15. STATUTES.—*Unwise.*—*Remedy.*—The remedy for the correction of a statute which is merely unwise is with the legislature and not with the courts. p. 382.

16. HIGHWAYS.—*Free Gravel Roads.*—*Petitioners.*—A free gravel road petition signed by "fifty or more" freeholders, residents of the townships bordering on the proposed road, is sufficient, though petitioners do not all live in the same township. p. 382.

17. HIGHWAYS.—*In Two Townships.*—*Jurisdiction.*—The board of commissioners has jurisdiction, without a township vote, to order the construction of a free gravel road, less than three miles long, extending into two townships. p. 382.

18. HIGHWAYS.—*Free Gravel Roads.*—*Jurisdiction.*—The board of commissioners has the right, without a township vote, to order the construction of a free gravel road, less than three miles long, upon the line of any highway or highways, regardless of courses, directions, or connections. p. 383.

19. HIGHWAYS.—*Municipalities.*—*Conflict.*—The fact that towns and cities have local systems for the improvement of their streets does not prevent the legislature from investing the board of commissioners with power to improve them as parts of a general system of highways. p. 384.

20. CONSTITUTIONAL LAW.— *Statutes.*—*Titles.*— *Highways.*—Under the title "An act concerning highways," a statute dealing with rural highways, and also with streets in towns and cities, is not bad as being in violation of article 4, §19, of the state Constitution, providing that an act shall embrace but a single subject which shall be expressed in the title, streets being highways. p. 384.

21. CONSTITUTIONAL LAW.—*Due Process.*—*Highways.*—*Viewers.*— *Public Utility.*—Statutes providing for the appointment of viewers to determine whether proposed highways will be of public utility, do not deny to interested parties due process of law. p. 385.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Suit by Samuel M. Smith and another against the Board of Commissioners of the County of Hamilton, and others. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*Shirts & Fertig,* for appellants, *Hanly, McAdams & Artman,* attorneys for appellees in No. 21,439 (*Harmon* v. *Gep-*

*hart post*, 391), by permission of the Court, filed a brief for appellants.

*Gentry & Cloe, F. Winter, Smith, Duncan, Hornbrook & Smith, A. C. Harris*, and *Miller, Shirley & Miller*, for appellees.

*M. B. Lairy* and *A. C. Harris*, by permission, filed a brief *pro interesse suo.*

*C. A. Royse* filed brief, by permission, as *amicus curiae.*

HADLEY, C. J.—Appellants seek to enjoin the commissioners from proceeding, under the act of 1907 (Acts 1907, p. 137, §7712 Burns 1908), in the construction and improvement of certain highways by grading, graveling, etc., and from issuing bonds in payment thereof, and to enjoin the county treasurer from selling such bonds, and the county auditor from placing upon the tax duplicate any levy of taxes that might be made for the payment of said bonds.

The complaint is in six paragraphs, to each of which a separate demurrer for insufficiency of facts was sustained, and appellants refusing to plead further, judgment was rendered against them that they take nothing and pay the cost of the proceeding.

The action of the court in sustaining the demurrers presents the questions for decision.

Each paragraph of the complaint is so framed as to question the constitutionality of some provisions contained in the several sections of the law of 1905 (Acts 1905, p. 521), and since no other objection is made to the sufficiency of any paragraph we deem it unprofitable to set forth the several averments.

The questions debated center in the proper construction to be given to section sixty-three of the act of 1905 (Acts 1905, p. 521), as amended in 1907 (Acts 1907, p. 137, §7712 Burns 1908), and have foundation in the sixth paragraph of complaint. The contention arises

over the word "includes," occurring in the third line of the amended section. So much of the section as presents the question reads as follows: "Whenever a petition signed by fifty or more freeholders and voters of any township in any county in this State, includes any incorporated town or city in such township having a population of less than thirty thousand inhabitants, praying," etc., certain things may be done. It is seen on first blush that, if we read the lines as they are written, the word "includes" conveys the sense of absurdity. It is clearly the verb of the subject "petition," and to read that whenever a petition signed, etc., includes any incorporated town, etc., we read nothing but nonsense. It is in effect agreed that there has been a misprint, an omission or clerical error in the section as printed. It is claimed on behalf of appellants that, in conformity to legislative intent, in lieu of the word "includes," there should be read into the section the words "which township contains an incorporated town," etc. Appellees claim that the word is a misprint, or a clerical error, and for "includes" should be read "including."

The difference in these contentions is very material. The reading, as appellants would have it, follows: "Whenever a petition signed by fifty or more freeholders and voters of any township in any county of this State, which township contains an incorporated town or city in such township having a population of less than thirty thousand inhabitants, praying that any public highway may be improved, or laid out and improved," etc., the board of commissioners shall proceed to carry out the provisions of the act. If the construction contended for by appellants is right, it is then plain that the board of commissioners has power to authorize the construction of such roads in but one class of townships, namely, those containing an incorporated town or city of less than thirty thousand inhabitants, and that it has no power or jurisdiction to authorize such construction, (1) in townships having only towns or

cities of thirty thousand, or more, inhabitants, and (2) in townships having no incorporated town or city. Under such a law, perhaps two-thirds of the townships of the State—and as a class doubtless the most needy—would be denied the benefits of the statute. Such a classification would be unnatural, artificial, unreasonable and special legislation, in violation of article 4, §22, of the Constitution, which forbids the passage of local or special laws for the laying out or improvement of highways.

When the same lines are read as maintained by appellees, they are as follows: "Whenever a petition signed by fifty or more freeholders and voters in any township in any county of this State, including any incorporated town or city in such township having a population of less than thirty thousand inhabitants, praying," etc., the commissioners shall proceed to carry out the provisions of the act. Under this reading it is clear that the legislature meant by this provision to authorize a commencement of proceedings upon the petition of fifty freeholders and voters of any township, including the freeholders and voters of all incorporated towns and cities in the townships of less than thirty thousand, intending thereby to make eligible to become petitioners all freehold voters within the township, rural and urban alike, except those residing in incorporated towns and cities of thirty thousand, or more, inhabitants, which latter should neither be taxed, nor be eligible to participate in such proceeding. By this latter rendering we have, beyond question, the door of the law open to every township in the State, and a classification of a very different nature from that appearing under the view maintained by appellants. Our task then is to determine which contention is the correct exposition of the statute. To begin with, it will be useful to fix in the mind the particular district that the legislature proposed to tax to pay the cost of such improvements. This is made definite and certain by

the provision of section seventy-six of the act of 1905 (Acts 1905, p. 521, §7726 Burns 1908), which reads as follows: "For the purpose of raising money to meet said bonds and interest thereon, the board of commissioners shall annually thereafter, at the time the general tax levy is made, levy a special tax upon the property of the township or townships, including the towns and cities, if such there be, of less than thirty thousand inhabitants, in such manner as to meet the principal and interest of said bonds as they become due." We invite special attention to the word "including" in the section just quoted. It is manifestly fair that all persons who shall be called upon to contribute a ratable proportion of the cost of the enterprise should have an equal right to become petitioners.

We have reached the conclusion that the view advanced by appellees is the correct one, that "includes" should be read "including," and following are some of the reasons that have led us to this decision.

It should first be noted that the litigants occupy the common ground that something must be read into the section to convey the legislative meaning. The proposal of two remedies invokes the application of a legal principle, namely: If there are two words or sets of words that may be inserted or substituted, and render the indefinite or ambiguous phrase certain in two different senses, one of which will render the law valid and the other invalid, and there exists doubt as to which is correct, it is the duty of the court to adopt that construction which will uphold the law. All doubts must be resolved in favor of the constitutional validity of the act. Black, Interp. of Laws, §43, Endlich, Interp. of Stat., §178; *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 145, 41 L. R. A. 337; *Citizens St. R. Co.* v. *Haugh* (1895), 142 Ind. 254; *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 33 L. R. A. 213, 51 L. R. A. 174; *Robinson* v. *Schenck* (1885), 102 Ind. 307; *Grenada County, etc.,* v. *Brogden* (1884), 112 U. S. 261, 268, 5 Sup.

Ct. 125, 28 L. Ed. 704; *Parsons* v. *Bedford* (1830), 3 Pet. *433, 7 L. Ed. 732; *Camp* v. *Rogers* (1877), 44 Conn., 291. Guided by this principle or rule, we will proceed. An authorized commission reported to the General Assembly of 1905 a codification of all of our existing highway laws, which report was adopted, and became the act entitled "An act concerning highways." Under the title "Gravel Roads by Taxation," the law for the construction of such roads, which had its origin in 1893 (Acts 1893, p. 196), amended in 1895 (Acts 1895, p. 143), twice in 1899 (Acts 1899, pp. 128 and 164), revised and readopted in 1901 (Acts 1901, p. 449), and supplemented in 1903 (Acts 1903, p. 294), was, in all its parts, assembled and set down in the general act concerning highways as sections sixty-two to eighty-three, inclusive, except section eighty-one. Acts 1905, p. 521.

We believe that it cannot be successfully controverted that the legislature, at least, intended throughout the origin and development of the system, that the benefits of the system should be placed within reach of every township in the State. Let us see. The first section under consideration (Acts 1905, p. 521, §62, §7711 Burns 1908)—the section that confers general jurisdiction upon the commissioners—provides that "the boards of commissioners of the several counties of the State of Indiana are hereby authorized and empowered to lay out, establish and cause to be graded, drained and paved with stone, gravel," etc., any new or existing highway, or part of a highway, in any township in said State. The next section (sixty-three), as amended by the act of 1907 (Acts 1907, p. 137, §7712 Burns 1908), which provides for the commencement of the proceeding, is in part as follows: "Whenever a petition signed by fifty or more freeholders and voters of any township in any county in this State * * * Provided, that in any township in this State in which there are not to exceed one hundred freehold voters, then upon the petition of a majority of the freeholder voters of any such township

to the board of county commissioners for the improvement of any road or roads, as required by fifty freehold voters, as in this act provided, then this act shall apply in all such cases and the board of county commissioners shall proceed under such petition and carry out the provisions of this act the same as if upon the petition of fifty freehold voters, as in this act provided.'' What is there in this language to justify the contention that it was the legislative intent to confine the construction of such roads to townships containing an incorporated city or town? It will hardly be claimed that the legislature, when it appended the proviso to §7712, *supra,* believed that every township in the State having less than one hundred freehold voters contained an incorporated town or city; and yet it is written: ''That in any township in this State in which there are not to exceed one hundred freehold voters'' a majority shall be sufficient to start the proceeding.

If ''includes'' can be read ''including,'' the language of §7712, *supra,* will reasonably stand no other interpretation than that insisted upon by appellees. The word ''includes'' made its first appearance in the codification act of 1905, being the act before us, and then only in the section relating to the petition (§7712, *supra*), and not in the section relating to the taxing district (§7726, *supra*). In the original law it was written ''including'' in all sections, and was so repeated by at least five subsequent bodies of the General Assembly.

Section one of the original act (Acts 1893, p. 196, §6924 Burns 1894) reads as follows: ''That the county commissioners of any county in this State when petitioned therefor by fifty freeholders, citizens of any township or townships contiguous to each other, including therein any incorporated town or city of less than thirty thousand inhabitants in such county wherein any road is to be improved,'' etc. The pertinent language of section six of the same act (Acts 1893, p. 196, §6929 Burns 1894) was as follows: ''For the purpose

of raising money necessary to meet said bonds and interest thereon, the board of commissioners shall annually thereafter * * * levy a special tax upon the property of the township or townships, including the towns and cities, if any there be, of less than thirty thousand inhabitants, in such manner as to meet the principal and interest of said bonds as they shall become due," etc. The precise language in both sections just quoted was repeated in the amendatory act of 1895 (Acts 1895, p. 143), and twice repeated in 1899 Acts 1899, pp. 128 and 164). Again, in 1901 (Acts 1901, p. 449, §7) the word "including" was used with respect to the petition and the taxing district in exactly the same sense. The same word, "including," was also employed in the same sense in an original act in 1903 (Acts 1903, p. 288) and in the amendatory act of 1903 (Acts 1903, p. 294, §1).

It thus appears that the word "including" was used in the same meaning and in substantially the same wording of said two sections (petition and taxing) eight separate times, by five different bodies of the General Assembly, and the statutes enforced for twelve years in all classes of townships and municipalities of less than thirty thousand inhabitants, and the constitutionality of the system in other respects sustained by this court in at least five cases preceding the passage of the act of 1905. *Board, etc., v. Harrell* (1897), 147 Ind. 500; *Board, etc., v. Reeves* (1897), 148 Ind. 467; *State v. Ray* (1899), 153 Ind. 334; *Lowe v. Board, etc.* (1901), 156 Ind. 163; *State, ex rel., v. Board, etc.* (1908), 170 Ind. 595. These facts must be accorded material influence in reaching a proper decision of the question before us. Add to this practical construction the further fact that in the act of 1905, *supra,* no other words of qualification, limitation or explanation of the new word "includes," were inserted, and no reason given, or made apparent, why the old word should be retained in the taxing section and changed in the section providing for the petition. When

the commission took up these several enactments for codification the word "including" had never, in a single instance, in the context referred to, been written "includes," and in the ten years of active operation of the law its proper application to every township in the State had never been called in question, and there appears no possible reason why the commission should by ungrammatical phrase seek to inject doubt into the law. There is no evidence that the word was changed by authority, and every reasonable hypothesis is that it was the result of a clerical error. We, therefore, hold that the word "includes," occurring in §7712, *supra,* should be read "including," and the construction of said section, as contended for by appellees, is sustained. Such construction makes the law apply to every foot of territory in the State, outside the limits of incorporated cities of thirty thousand, or more, inhabitants.

This renders the law general, and not obnoxious to article 4, §22, of the Constitution. A law that applies in the same way to all parts of the State, where conditions upon which it operates are similar, is a general, and not a local or special, law. *City of Indianapolis* v. *Navin, supra; Spaulding* v. *Mott* (1906), 167 Ind. 58; *State, ex rel.,* v. *Smith* (1902), 158 Ind. 543, 63 L. R. A. 116; *Pennsylvania Co.* v. *State* (1895), 142 Ind. 428; *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186.

6.

The exclusion from its operation of all incorporated towns and cities of thirty thousand, or more, inhabitants, and the inclusion of all such towns and cities of less than thirty thousand inhabitants, is not a capricious, unreasonable and unconstitutional classification.

7.

From common observation, we know that the necessities of public travel do not require the same class of highways in the rural districts as are necessary in the towns and cities; and do not require the same class of highways in all incorporated towns and cities. In our larger

8.

and compactly built cities, where much business is assembled, requiring a large number and variety of vehicles to handle the traffic, heavy and light, it is highly important, to secure easy and speedy passage and avoid congestion, that the roadway of the streets or highways be constructed wider, smoother and in a more substantial manner than would be necessary or reasonable in the country or smaller towns and cities, to secure the same degree of ease and comfort in passage. To meet the public convenience in our larger cities it is urgently demanded, in the more densely populated and business parts of the city, that the roadway of the street be improved from curb to curb of some hard and durable material admitting of a smooth surface, such as brick, blocks, asphalt and the like. These materials are expensive and the cost of construction is very great, therefore the use of such materials is wholly inappropriate and unreasonable, because unnecessary, in the country and smaller towns and cities. In some cities approaching thirty thousand inhabitants such highly improved streets may be necessary in the business center, but they are not necessary in all incorporated towns and cities; and the line must be drawn somewhere. Such a line must of necessity be more or less arbitrary. In

7. the classification of cities for governmental purposes, the law will not stop to investigate the political and social necessities of each particular city on the border line of the classes, and then set it on one side of the line or the other. There must be uniformity, and hence it is well established that population is a reasonable basis for classification. *City of Indianapolis* v. *Navin, supra; Bumb* v. *City of Evansville* (1907), 168 Ind. 272; *Campbell* v. *City of Indianapolis, supra.* The same rule applies in separating business from residential districts in cities for the exclusion of the sale of intoxicating liquors. A dividing line, if otherwise reasonable, will not be made sinuous to avoid a drug store or corner grocery that may happen to be located on the resi-

dential side of the proposed line. *City of Greencastle* v. *Thompson* (1907), 168 Ind. 493. Such a classification is not confined to highway purposes. In 1871 (Acts 1871, p. 20) a common school system was provided for cities of over thirty thousand inhabitants. In 1889 (Acts 1889, p. 432) boards of school commissioners in cities of over thirty thousand inhabitants were authorized to levy a library tax, and in 1899 (Acts 1899, p. 125) mayors of cities of thirty thousand, or more, inhabitants were empowered to veto ordinances.

It is firmly settled that the highways belong to, and are provided by, the State for the intercommunication and traffic of all inhabitants. To make them ample, safe and fit to conserve the public use, the State asserts the absolute dominion over them. By its legislature it has designated the agencies and officers that shall be held responsible for the proper opening, protection and improvement of all classes of highways, urban and rural alike, that have been set apart and established for the free use of the people. In the exercise of sovereign power it may, through its officers and agents, provide for grading, draining, graveling, macadamizing and paving whatever part, or parts, may be deemed necessary to the public convenience. It may levy taxes for construction and maintenance, may exact labor, and may punish for obstructing the same in town, city or country. *Cones* v. *Board, etc.* (1894), 137 Ind. 404; *State, ex rel.,* v. *Fox* (1902), 158 Ind. 126, 56 L. R. A. 893; *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180, 8 L. R. A. (N. S.) 1192; *Board, etc.,* v. *Branaman* (1907), 169 Ind. 80.

In matters of taxation for the support of public highways, the power of the legislature is unlimited, except as restricted by the Constitution. *Byram* v. *Board, etc.* (1896), 145 Ind. 240, 33 L. R. A. 476; *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595. A distinguished jurist says of this subject: ''One of the most important functions of government is making provision for public roads for the

use of the people. * * * No question is made of the competency of the legislature to levy taxes for the common highway, the improved turnpike and macadamized road. * * * Any or all of them may be constructed by the state, or, under state authority, by the municipal subdivision of the state within whose limits they may be needed.'' 1 Cooley, Taxation (3d ed.), 212, and see *State, ex rel.,* v. *Board, etc., supra.*

The doctrine relating to such special taxes proceeds upon the theory that the tax is returned to the person or property paying it, in the form of special benefits received, and hence bonds issued for the construction of such roads do not constitute a debt of the county or township, within the meaning of article 13 of the Constitution, as challenged by appellants in the first paragraph of complaint. *Board, etc.,* v. *Harrell, supra; Board, etc.,* v. *Reeves, supra.*

What shall constitute the taxing district, and whether it may be confined to, or disregard, boundary lines of counties, townships or lesser municipalities, are matters wholly within the discretion of the legislature. It is said in 1 Cooley, Taxation (3d ed.), 238: ''Taxing districts may be as numerous as the purposes for which taxes are levied. * * * It is not essential that the political divisions of the state shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the political divisions.'' *Gilson* v. *Board, etc.,* (1891), 128 Ind. 65, 69, 11 L. R. A. 835; *Board, etc.,* v. *Harrell, supra; Lowe* v. *Board, etc.* (1901), 156 Ind. 163; *Spaulding* v. *Mott* (1906), 167 Ind. 58; Elliott, Roads and Sts. (2d ed.), §83. The legislature has not only the power to levy the tax and to authorize the invasion of other governmental jurisdictions, but also the right, in ordinary cases, to declare what shall constitute the taxing district. With respect to this point, Judge Cooley says: ''When the nature of a case does not conclusively fix it, the power to determine what shall be the taxing district for

any particular burden is purely a legislative power, and not to be interfered with or controlled, except as it may be limited or restrained by constitutional provisions.'' 1 Cooley, Taxation (3d ed.), 234. See, also, *Byram v. Board, etc., supra; Board, etc., v. Harrell, supra.*

When the act under consideration was passed, the legislative body for forty years had been exercising the right to designate the limits of districts that should be taxed for the construction and improvement of highways therein, and what property should be taxed for that purpose. In so doing it has made limits and details about as varied as the acts themselves. In 1865 (Acts 1865, p. 90) the district was confined to all lands lying within a distance of three-fourths of a mile on each side of the proposed improvement, outside the limits of incorporated cities and towns. In 1867 there was another act of like import (Acts 1867, p. 172). An act in 1869 (Acts 1869, p. 73) authorized the assessment of all lands within one and one-half miles of either side and within a like distance of each end, without regard to municipal corporation lines. An act in 1877 (Acts 1877, p. 72) limited assessments to all lands benefited lying within one and one-half miles of each side and each end, without regard to municipal lines. A second act in 1877 (Acts 1877, p. 82) limited assessments to all benefited lands which lie within two miles of the improvement. An act of 1885 (Acts 1885, p. 162) confined assessments to lands within two miles of the improvement, and when it terminated in any incorporated town or city the latter might relieve itself of the burden by issuing its bonds and paying one-fifth of the total cost of the improvement. An act of 1889 (Acts 1889, p. 433), for county line roads, fixed the taxable district as that within two miles of the improvement. In 1893 (Acts 1893, p. 196) an act was passed declaring that the taxing district for the construction and improvement of such highways should embrace the entire township wherein the proposed improvement was located, outside the

limits of cities of thirty thousand and over inhabitants. The same provision with respect to the taxing district as that next before referred to was reaffirmed in 1895 (Acts 1895, p. 143), in 1899 (Acts 1899, p. 128), in 1901 (Acts 1901, p. 449), in 1903 (Acts 1903, p. 294), and readopted in 1905 in the act under consideration (Acts 1905, p. 521).

Another point of significance is that, during all the years of operation and administration of these laws, the right of the legislature to pass them was never doubted by this court in any opinion that has been brought to our attention. Here again attention may be called to the fact that twelve different bodies of the General Assembly, in a period of forty years, without an exception to the contrary, have asserted their constitutional authority to fix for the people the particular district that should be specifically taxed for the improvement of public highways, and this long and unbroken period of acquiescence and *quasi* approval by the people must be viewed by the courts as adding substantial strength to the position assumed by the lawmakers, were the question otherwise doubtful. We therefore hold that the act under review is not in violation of any provision of article 4, §22, of the state Constitution.

The second paragraph sets up the proposed improvement of a road less than three miles in length, which connects at one end with an improved free gravel road and at the other with a boundary line of the township where there is no such road, without first submitting the question to the voters of the township. The question here raised seems to be fully met by the act of February, 1907, amending section seventy of the act of 1905 (Acts 1907, p. 68, §1, §7719 Burns 1908), and the pertinent part of said amended paragraph is as follows: "And, provided, further, that if any petition filed as provided in section sixty-two of this act calls for the building or improvement of a road less than three miles in length connecting at each end with an improved free gravel or macadamized road either

within said township or townships or at the boundaries thereof, or connecting a free gravel or macadamized road with a boundary of said township, the board of county commissioners may, in their discretion, if they find said petition otherwise complies with this act, establish and order the construction of said road without submitting the question of building the same to an election of the voters of the township or townships concerned.'' Here is a plain provision that if the proposed road is less than three miles in length, and joins at one end a free gravel or macadamized road, and the other a boundary line of the township, without reference to whether it joins a gravel or other road at the boundary point, the commissioners have power to authorize the construction without a vote of the township, and to proceed with the same in all respects as if an affirmative vote of the township had been had. The legislature having clothed the commissioners with power or jurisdiction to construct such improvements, without a vote of the people, as we have seen, there is left to the courts no question but the regularity of the proceedings.

The third paragraph of complaint alleges that a certain unimproved highway commences at the west county line and runs thence east four and one-quarter miles and thence north one-half mile to the LaFayette pike; that said highway is intersected by two north and south free gravel roads, by one at a point one mile east of the county line and by the other at a point two miles east of said line; that upon the petition of Moore and fifty others a gravel road was, without vote of the township, ordered constructed, under the act of 1905 and amendments, on and over the one mile of unimproved road lying between the two north and south free gravel roads; that upon the petition of Davis and fifty others a like order was made for the construction of a gravel road over said unimproved highway from the gravel road intersection two miles east of the west county line, thence eastwardly two and one-quarter miles and thence north-

ward one-half mile to the LaFayette pike. The point made on this paragraph is that the road, being a continuous unimproved highway from the county line to the LaFayette pike, a distance of four and three-quarter miles, the electors of the township could not be deprived of the right to vote on its improvement by dividing it into sections of less than three miles in length, the claim being that under these facts the commissioners had no jurisdiction or power to make the improvement orders. If it should be shown in a proper way that certain taxpayers had combined and concerted together for the common purpose of avoiding a submission of the question of the improvement of the highway as a unit to the voters of the township or townships, by the presentation of petitions for the improvement of divisions of less than three miles in length, the commissioners might refuse to make the orders, and it would perhaps be their duty to do so. But no such question can be raised in this case, for the reason that if such question was properly before the commissioners it should reach this court by a direct appeal, and cannot be raised in a collateral attack by injunction. In this instance there were two proceedings and two sets of bonds, under two names, but the time of commencement and progress of neither are shown. Neither is there anything in the record, except the conclusion of the pleader in this case, to indicate collusion or bad faith in the petitioners, or that casts discredit upon the proceedings.

Under the statute it is a matter of discretion with the commissioners to order or refuse the improvement of all roads under three miles in length, without an affirmative vote of the township. All parts of roads, as complained of in paragraph five, of less than three miles, come within the same principle. The legislature has given the commissioners jurisdiction in such cases, and when that jurisdiction has been appealed to in a regular proceeding, fair upon its face, and the commissioners have acted within their proper powers, we can conceive of no principle that will

enable this court to review that decision, except, perhaps, for an abuse of discretion in a direct appeal. It is the duty of the courts to enforce the law; not to make it. If the improvement of highways by short distances, without a vote of the people, is unwise, or if the commissioners have greater powers with respect thereto than a sound public policy warrants, the remedy must be sought in the General Assembly, and not in the courts. *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595.

It is alleged in the fourth paragraph of the complaint that since the taking effect of the act of 1905, *supra,* there has been filed and presented to the commissioners, and by them granted without jurisdiction or authority, petitions for the construction of gravel roads, without a township vote, each of which petitions prayed for the construction of such roads on the boundary lines of certain townships, one of which proposed roads runs two miles in one township and one-eighth of a mile in another. Two points are made on this paragraph: (1) That the board had no jurisdiction to grant the order, because the petition presented to it was not signed by fifty freehold voters of each township bordering on the proposed improvement; (2) because the line of the one highway passed from one township into another.

With respect to the first proposition, it appears by the complaint that more than fifty freehold voters—residents of the townships bordering on the proposed improvement, and thus residents of the district subject to be taxed for the improvement—had signed the petition, and this renders the same sufficient. *Brown* v. *Miller* (1904), 162 Ind. 684; *Gilson* v. *Board,* etc. (1891), 128 Ind. 65, 11 L. R. A. 835.

As to the second proposition: Assuming, as the complaint alleges, that each of the roads complained of is located on a line dividing townships, a highway located on such a line, after a distance of two miles, crossing on one side into another township and continuing for one-

eighth of a mile between the new and one of the original townships, after crossing the township line, becomes no less a highway on the boundary line of townships, and the one in question being less than three miles in length was within the jurisdiction of the commissioners.

It is alleged in the fifth paragraph of the complaint that the commissioners had no jurisdiction to order, without an affirmative vote of the township, the construction

18. of a gravel road that commences at the southeast corner of section thirty-four in a free gravel road, running thence north one mile over an unimproved highway to an unimproved highway, thence westwardly along the last-named unimproved highway one and one-half miles to another free gravel road. Here we have a continuous line of road two and one-half miles in length, connecting at both ends with free gravel roads, thus placing the question within the letter of the statute. It makes no difference that the proposed improvement runs at a right angle, or that the sides of the angle are sections or parts of two unimproved highways laid out and established at different times, under different proceedings. A highway once established becomes a part of the general system of highways, or thoroughfares, and the law makes no distinction among the several lines and routes with respect to public rights and obligations. Most highways may be termed continuous beyond township, county and even state lines, and at best it is but a section, or part of a highway that may be properly embraced in a single petition. It is the public convenience and economy that the law regards, and in making improvements under the act before us the controlling consideration should be, not whether the proposed line or route is straight or crooked, long or short, nor whether it lies over the Smith road, or over the Jones road, or both, nor whether it runs through the streets of incorporated towns and cities of less than thirty thousand, but what line or route, and how much of it, is needed by the public to be improved, having

particular regard in all cases to economy in construction, and the right of the taxpayers to be heard on the propriety of making the improvement. It has been held by this court, under a like statute, that boards of commissioners have authority to order the improvement of streets, in incorporated towns and cities of less than thirty thousand inhabitants, as parts of general highways. *Lowe* v. *Board, etc.* (1901), 156 Ind. 163.

The fact that such municipalities have local systems for the improvement of their streets does not deprive the legislature of the power to invest the county commissioners with jurisdiction to authorize their improvement under the provisions of the act before us as parts of the general system of thoroughfares. It is very clear that it was a part of the legislative plan that the inhabitants of these municipalities should enjoy the benefits, as well as share the burden, of highway construction under the statute. The law is framed on lines of reciprocity. If the urban taxpayers contribute ratably to the construction of such roads in the country districts, it is but fair that rural taxpayers contribute similarly to the improvement of town and city streets.

We cannot agree with appellants' counsel, that so much of the statute as relates to streets is void under article 4, section nineteen, of the Constitution, for not being embraced within the title. The title is, "An act concerning highways." Streets are highways, and the Constitution does not require that the title of an act shall specify each particular or detail within the scope of the proposed legislation. It is sufficient if all details may be reasonably inferred. *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228; *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100; *Chicago, etc., R. Co.* v. *State, ex rel.* (1899), 153 Ind. 134; *Lewis* v. *State* (1897), 148 Ind. 346.

It is maintained by appellants that the question of public utility cannot be left to the final decision of the viewers without transgressing the due process of law provisions of both the state and federal Constitutions.

The doctrine of due process of law does not apply to an intangible interest held in common with the general public, in the existence or nonexistence of a public necessity or utility in the improvement of a public highway by taxation. The legislature has power to authorize its agents to declare the existence of a necessity or public utility in the improvement of highways, or to assume that such exists, and when that body designates an officer or board to determine the question in advance of ordering such improvement, as in this case, the finding of such officer or board with respect thereto is final and conclusive. It was said in the case of *Weaver* v. *Templin* (1888), 113 Ind. 298, relating to the repair or improvement of a public drain: "The question as to the necessity or expediency of repairing a public drain is not one to be tried in judicial proceedings, but is one committed solely to the discretion of the officer designated by law. * * * It has been held in very many analogous cases that a discretionary power of this nature may be conferred upon public officers, and that, when so conferred, courts cannot control its exercise."

We therefore hold that the authority conferred upon the viewers, finally to determine the question of public utility of the proposed improvements, was not in violation of any provision of the state or federal Constitution.

We find no error in the record.

Judgment affirmed.

Jordan and Monks, JJ., dissent.

## DISSENTING OPINION.

JORDAN, J.—I dissent from the holding of the court in the prevailing opinion. By §7711 Burns 1908, Acts 1905, p. 521, §62, the boards of commissioners of the several counties of this State are empowered "to lay out, establish and cause to be graded, drained and paved," etc., any highway, upon the conditions thereafter prescribed. Section 7712 Burns 1908, Acts 1907, p. 137, prescribes as a condition in respect to the jurisdiction of the board of commissioners that a petition signed by fifty or more freeholders and voters of any township shall first be presented to the board. The inquiry arises, What township was intended? The law, as I view it, answers the question—a township which includes an incorporated town or city having a population of less than thirty thousand inhabitants. To interpret the provisions of this section so as to make the word "includes" apply to the petition which is to be signed by the freeholders and voters is, to my mind, devoid of reason, and results in imputing an absurdity to the legislature, which always, if possible, must be avoided by a court.

It appears clear to me that the term "includes" applies to a township which within its limits includes some incorporated town or city having a population of less than thirty thousand inhabitants. Therefore, the act becomes local or special, and violates the provisions of article 4, §22, of the Constitution, which forbids the passage by the legislature of a local or special law "for laying out, opening, and working on, highways." This section also prohibits the enactment of a local or special law for the assessment and collection of taxes for road purposes.

It is plain that under the provisions of this law public highways in incorporated towns and cities having a population of over thirty thousand inhabitants cannot be improved thereunder; while, upon the other hand, highways in all incorporated towns and cities having a population

of less than thirty thousand can be improved by means of this statute.

While classification for legislative purposes is allowable, it must have a reasonable basis upon which to stand. Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter and rest upon some reason that is natural and substantial, and is not artificial. Not only must the classification treat alike all brought under its influence, under the same conditions, but it must embrace all within the class to which it is naturally related. Neither mere isolation nor arbitrary selection is proper classification. *Kraus* v. *Lehman* (1908), 170 Ind. 408, and cases cited; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 14 L. R. A. (N. S.) 418, and cases cited; *Armstrong* v. *State* (1908), 170 Ind. 188, 15 L. R. A. (N. S.) 646, and cases cited. There is no basis for the classification by which incorporated cities and towns having a population of less than thirty thousand inhabitants can improve the streets under said act, and incorporated cities having a population of thirty thousand and more cannot. There is no material difference between the streets and their improvement in cities to which said act applies and those cities to which it does not apply. Such a classification is arbitrary, and does not inhere in the subject-matter. It is true that when the nature of the tax does not conclusively fix the taxing district, the power to determine what shall be the taxing district for any particular burden is purely a legislative power and not to be interfered with or controlled except as it may be limited by constitutional provisions. 1 Cooley, Taxation (3d ed.), 234; *State, ex rel.,* v. *Board, etc.* (1908), 170 Ind. 595, and cases cited.

But it is manifest that under the guise of creating taxing districts, the legislature is not authorized to pass a local or special law in violation of article 4, §22, of the state Con-

stitution. *Board, etc.,* v. *State, ex rel.* (1900), 155 Ind. 604; *Board, etc.,* v. *State, ex rel.* (1904), 161 Ind. 616.

The act is as much in violation of article 4, §22, of the state Constitution, under the construction contended for by appellee, which construction is approved in the majority opinion, as it is under the construction contended for by appellant. While it is true that all reasonable presumptions must be indulged in favor of the validity of an act of the legislature, nevertheless, courts must obey the Constitution rather than the legislature, and must, upon their own responsibility, determine whether the particular statute involved violates the fundamental law. If it does, it must be adjudged invalid, regardless of the consequence which may follow the decision.

Monks, J., concurs.