### DEPARTMENT OF PUBLIC SANITATION OF THE CITY OF HAMMOND ET AL. *v.* SOLAN.

[No. 28,680. Filed March 22, 1951.]

**230**

*Galvin, Galvin & Leeney,* of Hammond, for appellants.

*Charles Levin; Virginia Lanahan* and *William J. Obermiller* (of counsel), all of Hammond, for appellee.

*Edward H. Knight, Michael B. Reddington,* Attorneys for City of Indianapolis; and *Ross, McCord, Ice & Miller,* of Indianapolis, Amici Curiae.

GILKISON, J.—The admitted facts in this case among others are to the effect that in October, 1938, the City of Hammond, pursuant to Ch. 258, Acts 1921 (§ 48-4227, Burns' 1950 Replacement) by a proper ordinance duly enacted, adopted Ch. 157 of the Acts 1917 (§§ 48-4201 to 48-4228, Burns' 1950 Replacement inclusive), thus creating the Sanitary District of Hammond, the area of which was conterminous with the corporate boundaries of the City of Hammond. On January 26, 1948 appellants, acting agreeably with the statutes aforenoted as amended by Ch. 107, Acts 1943 (§§ 48-4203, 48-4205, 48-4217, 48-4221, Burns' 1950 Replacement) incorporated the town of Munster, Lake County, Indiana, into the Sanitary District of Hammond, so, that Sanitary District now consists of all the area within the corporate limits of the City of Hammond and the town of Munster in said county and state. Hammond is a city of the second class.

Pursuant to authority given appellant, Sanitary District of Hammond, by the statutes noted, the Board of Sanitary Commissioners on February 14, 1949 adopted a resolution determining to sell bonds of said district

in the sum of Three Hundred Thousand Dollars, payable over a period of thirty years from a tax levy to be made annually by said board on the taxable property real and personal in the district. The proceeds from the sale of such bonds is to be used by the Sanitary Board for the construction of intercepting and connecting sewers, pumps and buildings, for the purpose of bringing the sanitary sewage of the town of Munster into the intercepting and connecting sewage system and the sewage disposal plant of the district. All necessary legal steps required as a pre-requisite to the sale of such bonds were taken. A copy of the resolution determining to sell the bonds was duly certified by the Board of Sanitary Commissioners to the Controller of the City of Hammond, for the purpose of offering the same for sale pursuant to the Acts before noted.

In a well prepared amended complaint of nineteen rhetorical paragraphs, appellee as a real and personal property owner, citizen and taxpayer of the City of Hammond and of the Sanitary District of such city, on behalf of himself and for all other persons similarly situated, brought this action to enjoin appellants from making, executing, issuing, delivering, selling or offering said bonds for sale, for the reasons:

(1) That appellant, Wainwright, as City Controller of the City of Hammond, proposes to sell such bonds pursuant to Chapter 157, Acts 1917, as amended by Chapter 46, Acts 1920, Sec. 1; Chapter 107, Acts 1943, Sec. 3; and Chapter 84, Acts 1929, Sec. 1, which provide for the sale of bonds by the district to an amount not in excess of two per centum of the assessed valuation of the taxable property in the Sanitary District. That the acts referred to are unconstitutional and void in that they authorize the issuance and sale of bonds that will create an indebtedness of the city in excess of the limitation fixed by Section 1, Article 13, of the

Constitution of the State of Indiana. That Chapter 157 of the Acts of 1917 and all Acts amendatory thereof is and are void because they are in conflict with Article 13 of the Constitution of Indiana. That such Act as amended is a subterfuge and device for the evasion of the debt limitation placed upon the City of Hammond and the town of Munster by said Article 13, in that said bonds will create an indebtedness of said city and town in excess of the constitutional limitation. Irreparable injury is averred. Prayer that defendants (appellants) be enjoined from making, delivering, selling or offering for sale the proposed bond issue or any part thereof, from levying taxes for their payment and all proper relief.

Appellants' answer under the rules admits many of the averments of the complaint but it denies that the bonds to be offered for sale are invalid or void. They deny the Act under which they have proceeded is invalid and void and that the bonds issued pursuant thereto would be invalid and void; they aver said bonds do not purport to be an obligation of the City of Hammond, or of the town of Munster, Indiana. They deny that if the bonds are issued it will increase the indebtedness of the City of Hammond, Indiana, beyond the limitations provided by the Constitution of Indiana and will be in violation thereof. On the contrary they aver that the issuance of said bonds will not create a debt of the City of Hammond, Indiana, but will be an obligation payable out of special taxes to be levied on all taxable property in the Sanitary District of Hammond, Indiana.

Upon the trial most of the facts were stipulated. Among the stipulations we find the following: That the taxable property within the City of Hammond is of the value of $114,922,555 and that of the town of Munster is $5,248,925. That as of the date of the

trial the outstanding indebtedness of the civil City of Hammond was $606,920.

That Hammond is a rapidly growing city having increased in population from 12,376 in 1900 to about 90,000 now. Munster has a population of about 5,000. Other cities and towns and country districts near Hammond are rapidly growing in population and wealth. Prior to the establishment of the Sanitary District, Hammond had constructed approximately 200 miles of sewers, and seven pumping stations to pump the sewage at the different outfalls into the streams where the sewers were discharged. All of these were constructed and paid for by special assessments against the property located in the area served. The sewage from the north part of Hammond was discharged into Lake Michigan; from the central part into the Grand Calumet River which empties into Lake Michigan; and from the southern part into the Little Calumet River which also flows into Lake Michigan. As a result of such discharge of raw sewage by Hammond and Munster and other cities, towns and densely populated districts near Hammond, Lake Michigan along its south and southwestern shores became greatly polluted.

When the Sanitary District came into existence in 1938 it built structures, pumping stations, equipment and intercepting and connecting sewers, at a cost of $3,433,252.51, approximately $1,600,000 of the cost was provided by the Federal P. W. A. and the remainder was paid for with money received from the sale of bonds of the Sanitary District as authorized by Chapter 157, Acts 1917 and amendments thereof. Additional structures and sewers have since been added at a cost of $566,000 which sum was raised by like sales of bonds of the Sanitary District. At the present time there are Sanitary District Bonds outstanding in the sum of $1,824,200.

The court found that appellee is entitled to the relief prayed for in his petition, and "That Section Seventeen (17), Chapter 157 of the Acts of 1917, as amended by Section One (1), Chapter 46 of the Acts of 1920; and Section Three (3), Chapter 107 of the Acts of 1920; and Section Three (3), Chapter 107 of the Acts of 1943 (§ 48-4217, Burns' 1950 Replacement.) are unconstitutional and void and in violation of Art. 13 of the Constitution of the State of Indiana, and that the threatened acts of the defendants and each of them, are illegal and void, and that the defendants and each of them, their deputies and agents, assistants, clerks, representatives, officers, servants, employees, and successors in office, should be perpetually enjoined from issuing, selling, offering for sale, or executing any bonds pursuant to said sections." From a judgment rendered on this finding the appeal is taken.

The issues as made and the evidence presented by way of stipulation and witnesses are such as to present a single question. Was the debt attempted to be created a debt of the City of Hammond and the town of Munster? If so it was unlawful and void if it made the indebtedness of either municipality in excess of the 2% limitation of the State Constitution. If the debt attempted to be created is not a debt of the city and town but is a debt only of the Hammond Sanitary District as before described it is not prohibited by the Constitutional limitation noted.

Some sixty years ago a question somewhat analogous to the question presented in the instant case was before this court, and it then made a pertinent statement as follows:

"It is not unusual for the Legislatures of the several States of the Union, in the exercise of the general power of taxation, as well as in the power

of local assessments, to create a special taxing district, without regard to municipal or political subdivisions of the States, and to levy a tax on all property within such district by a uniform rule, according to its value, for the purpose of aiding in the construction of public local improvements." *Gilson et al.* v. *The Board of Commissioners of Rush County* (1891), 128 Ind. 65, 70, 27 N. E. 235.

In that case it was contended that the statute involved was in violation of Sec. 22, Art. 4, and Sec. 1, Art. 10 of the Indiana Constitution, but the contention was not sustained. No question was presented concerning a violation of Art. 13 of the Indiana Constitution. The opinion quotes with approval from *Bowles* v. *State* (1881), 37 Ohio St. 35, 42, wherein it is said:

"The first objection suggested to the validity of this statute, relates to the power of the legislature to create a tax district without regard to the boundaries of the municipal or political subdivisions of the state. A sufficient answer to the objection is, that the power exercised is a legislative one, and there is no express or implied limitation upon the power found in the constitution. That the power is not expressly inhibited is clear, and we are persuaded that there is no implication against it, from the fact that it has always been exercised without challenge in divers ways for the purpose of promoting local advantages, not only in the exercise of the power of local assessments, where the burden of local improvements has been placed upon property specially benefited, and in proportion to the benefits, but by general taxation upon local districts other than municipal or political subdivisions. . . ."

The opinion then says that the adjudications noted "seem to be in exact accord with the elementary books upon the same subject." It then cites and quotes *Cooley on Taxation* (Ed. 1876), p. 113 and other sections.

In an analogous situation a similar question was presented to this court in *Johnson* v. *Board of Park Commissioners* (1930), 202 Ind. 282, 290, 291, 174 N. E. 91. The Acts of 1917, Ch. 68, p. 161 (§§ 48-5628 to 48-5635, Burns' 1950 Replacement) authorized the establishment of a park district in cities of the second class, and among other things provided for the issuance and sale of bonds of the park district to pay for real estate taken pursuant to the Act, the improvement thereof, and necessary expenses incurred and the cost of supervision and administration during the period of construction, such bonds and interest thereon to be paid only out of special taxes levied on all the property in the park district. The total issue of such bonds not at any time to be in excess of one per centum of the assessed valuation, less mortgage exemptions, of all the property in the park district. An action was brought to enjoin the board of Park Commissioners et al. from issuing bonds to defray the expenses of establishing a park under this law. One reason for the attack was that the act is an effort to evade the two per cent. debt limitation and therefore is a violation of Art. 13 of the Indiana Constitution. In disposing of that question this court rather tersely reasoned that the act merely granted additional power to the park board, and that the power so given was not in violation of Art. 13 of the Indiana Constitution, even though it might add an additional one per cent. tax on the property in the taxed district.

In *Board of Com'rs. etc.* v. *Harrell et al.* (1897), 147 Ind. 500, 46 N. E. 124, 125, which was an action to enjoin the Board of Commissioners of Monroe County from letting a contract and issuing bonds to pay for the construction of a free gravel road in one of the townships of the county under the free gravel road statutes (§§ 6924-6934, Burns' R. S. 1894 as amended

by Acts 1895, p. 143) one reason for which was that the letting of the contract and issuing bonds to construct the road would create an indebtedness of the township in excess of two per cent. of the assessed value of the property of the township, in violation of Art. 13, Indiana Constitution. In determining this question the court quoted from *Gilson et al.* v. *Board of Commissioners of Rush County, supra,* as to the power of the legislature to create special taxing districts, and likewise quoted from *Cooley on Taxation* (Ed. 1876), p. 113, as follows:

> "Taxing districts may be as numerous as the purposes for which taxes are levied. . . . It is not essential that the political districts of the State shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the political divisions. . . . The political divisions of the State are necessarily regarded in taxation only where the tax itself is for a purpose specially pertaining to one of them in its political capacity, so that, as already stated, the nature of the tax will determine the district."

After extensive reasoning and the citation of many authorities the court came to the conclusion that the debt in question was the debt only of the special taxing district, and not of the township in which the road was built, and for that reason was not inhibited by Art. 13, Indiana Constitution.

There are many other Indiana cases supporting this idea among which we note the following: *Board of Com'rs., etc., et al.* v. *State ex rel. Brown et al.* (1897), 147 Ind. 476, 489, 490, 46 N. E. 908; *Board of Com'rs. of Switzerland County* v. *Reeves et al.* (1897), 148 Ind. 467, 472, 46 N. E. 995; *Lowe* v. *Board, etc.* (1901), 156 Ind. 163, 165, 59 N. E. 466; *Sefton* v. *Board, etc.* (1903), 160 Ind. 357, 359, 66 N. E. 891; *Brown* v. *Miller* (1904), 162 Ind. 684, 686, 687, 71 N. E. 122; *State, ex*

*rel.* v. *Board, etc.* (1908), 170 Ind. 595, 611, 612, 85 N. E. 513; *Smith* v. *Board of Commissioners* (1910), 173 Ind. 364, 377, 90 N. E. 881; *Brown* v. *Guthrie* (1916), 185 Ind. 669, 671, 114 N. E. 443; *Hutchins* v. *Town of Fremont* (1924), 194 Ind. 74, 84, 142 N. E. 3.

From these and other authorities we think that at the present time the test to determine whether the indebtedness contracted is that of the governmental unit issuing it or only of the taxing district may be stated thus:

If the statute in question authorized the property owners of the taxing district legally to bind themselves in the construction and maintenance of a local public improvement (not political or governmental in nature) for the use of those who receive the special benefit thereof, and of the public, the debt contracted is the debt of the taxing district and not that of the political or governmental subdivision that executed the evidence of indebtedness under command of the statute and does not constitute a debt of such political or governmental unit. In such case the tax or assessment is based upon the theory that it is a return for the benefit received by the persons who pay the tax or by the property assessed. *Board of Commissioners* v. *Harrell* (1897), 147 Ind. 500, *supra*, at page 505; *Smith* v. *Board of Commissioners* (1910), 173 Ind. 364, 377, *supra*. The bonds issued by the Board of Sanitary Commissioners under the law in controversy are not payable out of the general fund of the municipalities in question but are payable out of a special fund to be raised by a special tax imposed as a benefit upon all the taxable property in the taxing district. *Board of Commissioners* v. *Harrell, supra,* page 507. It has been held frequently by this court that similar debts are not debts of the governmental subdivisions named, and hence could not infringe Art. 13

of the Indiana Constitution. *Board of Com'rs. of Switzerland County* v. *Reeves et al.* (1897), 148 Ind. 467, 473, *supra; Smith* v. *Board of Commissioners* (1910), 173 Ind. 364, 377, *supra.*

It has long been the law that the funds essential to pay for a special public improvement may be raised either by an assessment on real estate specially benefited, or by a general tax on all the property, real and personal located in the taxing district, since personal property may be benefited as well as real estate. The method to be followed in securing the funds is for the legislature to determine. *Gilson et al.* v. *The Board of Commissioners of Rush County* (1891), 128 Ind. 65, 71, *supra; Smith* v. *Board* (1910), 173 Ind. 364, 377, *supra.* The method it selects—whether a special assessment on real estate benefited or a general tax on all the property in the taxing district, is nevertheless in the nature of an assessment of benefits to the persons and property taxed, by the legislature in the exercise of its sovereign power of taxation, and it does not constitute a debt of the political or governmental subdivision within the meaning of Art. 13 of the Indiana Constitution. Such debt is only that of the special taxing district. *Gilson et al* v. *Board of Commissioners of Rush County* (1891), 128 Ind. 65, 70, *supra; Board of Commissioners* v. *Harrell* (1897), 147 Ind. 500, 506, *supra;* 48 Am. Jur., Special or Local Assessments, § 15, pp. 575, 576.

Appellee calls our attention to two recent decisions of this court—*Cerajewski* v. *McVey* (1947), 225 Ind. 67, 72 N. E. 2d 650, and *Rappaport* v. *Dept. of Public Health* (1949), 227 Ind. 508, 87 N. E. 2d 77, upon the reasoning of which his complaint is largely based. The Cerajewski case is clearly distinguishable from the case at bar, since in that case the taxing district attempted to be established was in substance a duplica-

tion of the School City of Hammond, and the apparent purpose seemed to be to evade the debt limitation placed upon the city by Art. 13, Indiana Constitution. In Indiana education is a function of government. Art. 8, Indiana Constitution. We think the Cerajewski case was correctly decided.

The Rappaport case presents a more serious question. We have no constitutional provision on the subject of health as we have on schools but there is probably nothing in which the public has a greater interest, or upon which the public welfare is more dependent. It is a matter deserving the constant, diligent and studious attention of the legislature. Therefore, it seems quite reasonable that the erection and maintenance of proper hospital facilities in a densely populated area is an essential local public improvement justifying the creation of a separate taxing district, from which to raise funds to accomplish the desired ends, without offending Art. 13 of the Constitution. To say the least this is a border line case that might well have been decided either way. We are inclined to limit it to its own facts, and not to extend its reasoning or principle in any way.

In a state growing rapidly in population and even more rapidly in scientific discovery, that which is considered an outstanding luxury in one decade frequently becomes an absolute necessity in the next. For this reason it is not possible for a court to announce a hard and fast rule defining a "public local improvement" that will be binding upon legislatures and courts in future years. On the contrary the definition must be left sufficiently flexible to take care of the necessities of the future.

The sanitary disposal of sewage at the present time in the Hammond Sanitary District, under the admis-

sions, stipulations and undisputed evidence in  this case is an essential public local improvement now, agreeable with the many decisions of this court, the decisions in the courts of sister states, and the opinions of the text writers.

The judgment of the trial court is therefore reversed with instructions to sustain the motion for new trial and for further proceedings agreeable with this opinion.

Jasper, J., concurs in results.

NOTE.—Reported in 97 N. E. 2d 495.