SOUTH BEND PUBLIC TRANSPORTATION CORPORATION, Paul J. Schwertley, and Joseph T. Helling, Appellants (Plaintiffs below),

v.

CITY OF SOUTH BEND, and City of South Bend, on Behalf of its Department of Redevelopment, Appellees (Defendants below).

No. 681S174.

Supreme Court of Indiana.

Dec. 1, 1981.

Richard D. Doyle, Harold E. Brueseke, South Bend, for appellants South Bend Public Transp. Corp. and Paul J. Schwertley.

Harold E. Brueseke, South Bend, for intervening plaintiff-appellant Joseph T. Helling.

Richard L. Hill, City Atty., Thomas J. Brunner, Jr., Parker, Brunner & Hamilton, South Bend, for appellee City of South Bend; Robert D. McCord, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, of counsel.

Kevin J. Butler, Sweeney, Butler & Simeri, South Bend, for appellee City of South Bend, on behalf of its Dept. of Redevelopment; Michael Borge, Borge & Pitt, Chicago, Ill., of counsel.

HUNTER, Justice.

This is an appeal from a declaratory judgment of the St. Joseph Circuit Court in which the court held that two Indiana statutes permitting tax allocation financing, Ind.Code §§ 18–7–7–23 and 18–7–7–39.1 (Burns 1980 Supp.) [now recodified as Ind. Code §§ 36–7–14–25 and 36–7–14–39 (Burns 1981 Repl.)], were constitutional. The case began as an action brought by the South Bend Public Transportation Corporation (Transpo) and two individual taxpayers,

Paul J. Schwertley and Joseph T. Helling, who asserted the invalidity of the use of tax allocation financing by the City of South Bend and its Department of Redevelopment (Department) to finance certain urban redevelopment projects.

The facts which gave rise to this appeal are as follows. The Department adopted certain resolutions in June and July of 1980 which created a Central Downtown Urban Renewal "Allocation Area No. 1" as part of the planning and development of a $36 million multi-use downtown project called Century Mall. This proposed project to revitalize the city's central business district consists of an enclosed two-level retail shopping mall, two office building structures, a public park and pedestrian bridges. The Allocation Area is a specific area within the corporate limits of Transpo, the City and the Department. The Department is a special taxing district encompassing all of the territory of the City.

Under the tax allocation statutes, an impetus towards redevelopment of blighted urban areas is achieved by the reallocation of local tax money in such a fashion that overlapping taxing jurisdictions which benefit from improvements in the renewal areas also share in their cost. The overlapping taxing bodies are all beneficiaries of any post-development revenue increases due to increased assessed values in the development area. Prior to the legislative amendments authorizing tax allocation procedures, the Department alone bore the costs of land acquisition, clearance, and improvements associated with any redevelopment and the overlapping taxing bodies did not share in the public costs of the redevelopment. The tax allocation legislation requires a sharing of those costs by all public bodies benefiting from the redevelopment by requiring all post-development tax revenues attributable to increased assessed values to be paid to the Department until all costs of public improvements associated with the redevelopment have been paid. The taxing bodies remain entitled to all property tax revenues not attributable to the development within the Allocation Area. When the redevelopment costs have

been paid, the tax allocation is discontinued and all public bodies share in tax revenues as they did prior to the redevelopment and enjoy the benefits of increased property tax values and revenues. The legislature passed the tax allocation financing statutes at this time to provide redevelopment commissions with a necessary means to promote development when local governments are facing massive cutbacks in federal assistance and increasingly tight fiscal constraints attributable to the propertry tax freeze.

The trial court found that although the tax allocation provisions would divert certain tax proceeds in the Allocation Area from Transpo for a period of time, the legislation was in all respects constitutional and valid. The court further found that the Allocation Resolution adopted by the Department is in all respects valid and enforceable and that the costs of the action shall be shared equally by Plaintiff Transpo and Defendants City and Department.

We granted transfer of this cause on June 30, 1981, pursuant to Appellate Rule 4(A)(10). In this opinion, we now affirm the judgment of the trial court finding these statutes are constitutionally valid.

The history of the contested legislation starts in 1953 when the Indiana General Assembly passed an act known as the Redevelopment of Cities and Towns Act (Act), Ind.Code § 18–7–7–1, et seq. This Court upheld the constitutionality of this Act and other similar legislation in McCoy et al. v. City of Evansville, (1958) 239 Ind. 98, 154 N.E.2d 804, and Alanel Corp. v. Indianapolis Redevelopment Commission, (1958) 239 Ind. 35, 154 N.E.2d 515. In those cases, we held that the redevelopment of blighted areas constitutes a local improvement, that redevelopment commissions constitute special taxing districts and are not independent municipal corporations subject to Indiana constitutional debt limitations, and that the redevelopment of blighted areas constitutes a public use and purpose. The Act has been amended a number of times with changes of a technical nature or otherwise not mate-

rial to this suit. The sections providing for the tax allocation financing methods being questioned were added in 1977 with subsequent technical amendments.[1]

■ Appellants first contend that the tax allocation bonds issued under Ind.Code § 18–7–7–23, supra, will violate the two percent debt limitation provision of Article 13, § 1 of the Indiana Constitution. However, we find that it is well settled that our Indiana General Assembly has the power to create municipal corporations for proper purposes and also the power to create special taxing districts. The two percent debt limit is *not* applicable to entities which are special taxing districts. *Lawson v. South Bend Public Transportation Corporation*, (1971) 256 Ind. 552, 270 N.E.2d 746; *McCoy v. City of Evansville, supra; Alanel Corp. v. Indianapolis Redevelopment Commission, supra; City of Indianapolis v. Buckner*, (1954) 233 Ind. 32, 116 N.E.2d 507.

■ Appellants recognize that the legislature has expressly designated redevelopment commissions as "special taxing districts" and this Court has upheld this designation. *McCoy, supra; Alanel, supra.*

1. The entire Redevelopment Act has now been recodified as part of Title 36 and the sections questioned in this case are now · Ind.Code §§ 36–7–14–25 and 36–7–14–39 (Burns 1981 Repl.).

Ind.Code § 36–7–14–25 reads in pertinent part:

"(a) In addition to other methods of raising money for property acquisition or redevelopment in [of] a blighted area, and in anticipation of the special tax to be levied and allocated under sections 27 and 39 [36–7–14–27 and 36–7–14–39] of this chapter, the redevelopment commission may, by resolution, issue the bonds of the special taxing district in the name of the unit. The amount of the bonds may not exceed the total, as estimated by the commission, of all expenses reasonably incurred in connection with the acquisition and redevelopment of the property. . . .

    \*     \*     \*     \*     \*     \*

"(i) The bonds are not a corporate obligation of the unit but are an indebtedness of the taxing district. The bonds and interest are payable:

"(1) From a special tax levied upon all of the property in the taxing district, as provided by section 27 [36–7–14–27] of this chapter; or

"(2) From the tax proceeds allocated under section 39(b)(2) [36–7–14–39(b)(2)] of this chapter.

"If the bonds are payable solely from the tax proceeds allocated under section 39(b)(2) of this chapter, they may be issued in any amount without limitation."

Ind.Code § 36–7–14–39 reads in pertinent part:

"(b) A declaratory resolution adopted under section 15 of this chapter may include a provision with respect to the allocation and distribution of real property taxes for the purposes and in the manner provided in this section. A declaratory resolution previously adopted may include an allocation provision by the amendment of that declaratory resolution in accordance with the procedures required for its original adoption. The allocation provision may apply to all or part of the blighted area. The allocation provision must require that any real property taxes subsequently levied by or for the benefit of any public body entitled to a distribution of property taxes on taxable real property in the allocation area be allocated and distributed as follows:

"(1) Except as otherwise provided in this section, the proceeds of the taxes attributable to the lessor [sic] of:

"(A) The assessed value of the property for the assessment date with respect to which the allocation and distribution is made; or

"(B) The assessed value of all the property as finally determined for the assessment date immediately preceding the effective date of the allocation provision of the declaratory resolution;

"shall be allocated to and, when collected, paid into the funds of the respective taxing units.

"(2) Except as otherwise provided in this section, real property tax proceeds in excess of those described in subdivision (1) shall be allocated to the redevelopment district and, when collected, paid into a special fund that may be used by the redevelopment district only to:

"(A) Pay the principal of and interest on any obligations payable from allocated tax proceeds which are incurred by the redevelopment district for the purpose of financing or refinancing the redevelopment of the allocation area; or

"(B) Reimburse the unit for expenditures made by it for public improvements in the allocation area, or for rentals paid by it for a building or parking facility in the allocation area under any lease entered into under IC 36–1–10 [36–1–10–1—36–1–10–19].

"(3) When the monies in the allocation fund are sufficient to pay when due all principal and interest, monies in the allocation fund in excess of that amount shall be paid to the respective taxing units in the manner prescribed by subdivision (1)."

However, they argue that the present statute has significantly expanded the powers of redevelopment commissions so that they should now be considered to be municipal corporations and not special taxing districts. Appellants give as examples of the expanded powers, the power to establish allocation areas and to freeze the assessed value of taxable property therein, the power to identify blighted areas, and the power to acquire property and issue tax allocation bonds payable from incremental taxes.

We find that none of these expanded powers are such as will change a redevelopment commission from a special taxing district into a separate and independent municipal corporation. The power to create allocation areas is similar to that of creating blighted areas (which was in the original enactment) and is subject to approval by the governing body of the city. The power to issue special tax allocation bonds is likewise only a change in form and not in substance as redevelopment commissions have always had the power to issue special taxing district bonds. The legislature has properly exercised its power to allocate and distribute incremental taxes in such a way that each benefiting public body will bear a share of the costs of public improvements. The legislature approved the tax allocation financing method, but it did not change the nature of the redevelopment commissions. It expressly did not change the designation of the redevelopment commissions as special taxing districts and we can see no significant change in the degree of independence of these commissions which would in fact convert them into municipal corporations. *Archer v. City of Indianapolis*, (1954) 233 Ind. 640, 122 N.E.2d 607; *McCoy, supra; Alanel, supra.*

Appellants further argue that the tax allocation bonds do constitute debt within the meaning of Article 13, Section 1 of the Indiana Constitution since they ultimately involve the general taxing power of the municipality. A careful study of the law negates this analysis. The Redevelopment Commission can only apply incremental tax revenues which are attributable to *increases* in the assessed value of taxable property in the Allocation Area to the repayment of the bonds. If the value of property does not increase, the bonds will not be repaid. Therefore, the original taxing power of the municipality will not be changed.

We have clearly held against appellant's position in *Department of Public Sanitation of the City of Hammond v. Solan,* (1951) 229 Ind. 228, 97 N.E.2d 495, where we carefully distinguished between the debt of a political or governmental subdivision and the debt of a special taxing district:

"It has long been the law that the funds essential to pay for a special public improvement may be raised either by an assessment on real estate specially benefited, or by a general tax on all the property, real and personal located in the taxing district, since personal property may be benefited as well as real estate. The method to be followed in securing the funds is for the legislature to determine. * * * The method it selects— whether a special assessment on real estate benefited or a general tax on all the property in the taxing district, is nevertheless in the nature of an assessment of benefits to the persons and property taxed, by the legislature in the exercise of its sovereign power of taxation, and it does not constitute a debt of the political or governmental subdivision within the meaning of Art. 13 of the Indiana Constitution. Such debt is only that of the special taxing district." 229. Ind. at 239, 97 N.E.2d at 500 [citations omitted].

We further analyzed this distinction in *Dortch v. Lugar,* (1971) 255 Ind. 545, 266 N.E.2d 25, where we explained:

"[I]t is first necessary to understand the legal nature of a taxing district and the rationale advanced by this court for the allowance of debt incurrence by governmental or taxing district units with coterminous boundaries. There have been many relatively recent cases which have discussed the constitutional propriety of the special taxing district device and the following cases have upheld the creation

of flood control districts, *Book v. Board of Flood Control Commissioners* (1959), 239 Ind. 160, 156 N.E.2d 87; redevelopment districts, *Alanel Corp. v. Indianapolis Redevelopment Commission* (1958), 239 Ind. 35, 154 N.E.2d 515; conservancy districts, *Martin v. Ben Davis Conservancy District, supra* [238 Ind. 502, 153 N.E.2d 125]; sanitary districts, *Department of Sanitation of The City of Hammond v. Solan* (1951), 229 Ind. 228, 97 N.E.2d 495; and park districts, *Johnson v. Board of Park Commissioners of Fort Wayne* (1930), 202 Ind. 282, 174 N.E. 91.

"From these cases, several principles may be synthesized respecting the creation of special taxing districts to pay for local improvements. In view of the many reported cases on the subject, we deem it unnecessary to here amplify on the legal precedents so established. Suffice it to say that the Legislature may create such special taxing districts for local public improvements and provide for the levy of special ad valorem taxes throughout the district based upon the benefit accruing to the property holders therein situated; the Legislature may determine the boundaries of such districts or delegate to an agency the power to so determine them, *conforming or not* to the political or governmental subdivision there located; the Legislature may designate the agency to perform the administrative functions necessary on behalf of the district; and obligations so incurred by such a district payable out of the special benefit ad valorem tax are not debts of a municipal corporation within the provisions of Art. 13, § 1, of the Indiana Constitution." 255 Ind. at 571–572, 266 N.E.2d at 42.

Since the Redevelopment Commission is a special taxing district, the debt limitation provision of Article 13, Section 1 of the Indiana Constitution does not apply. *McCoy, supra; Alanel, supra; Archer, supra.*

◾ Next, appellants argue that the redevelopment commission is an agency of the city since it must have the city's approval of the designation of a blighted area and therefore its debt must be the city's debt. They argue that when the separate character of a public body with taxing powers is a sham so as to enable the municipal corporation on behalf of which it operates to evade its debt limit, the court will deny special taxing district status as it did in *Rappaport v. Dept. of Public Health*, (1949) 227 Ind. 508, 87 N.E.2d 77. However, that case involved a statute that purported to create a special taxing district for public health and hospital services, but the court held that these services were part of the traditional activities provided by the city and did not constitute a separate "local improvement" which would necessitate the creation of a special taxing district. That situation does not apply in the instant case, as we have clearly held that redevelopment *is* a "local improvement" as is required for the creation of a special taxing district, and the legislature was acting within its power when it authorized the redevelopment commissions to be established as special taxing districts. *McCoy, supra; Alanel, supra.*

◾ Appellants next contend that the tax allocation financing plan set out in Ind. Code § 18–7–7–39.1, *supra*, does not meet the existing criteria governing taxation by special taxing districts and does not meet the uniform and equal taxation requirement of Article 10, Section 1 of the Indiana Constitution. Appellants complain that the burden of the costs of the improvements falls not only on the people and property within the Allocation Area but also indirectly on residents outside of the Area but within overlapping taxing units. They cite the South Bend Community School Corporation, St. Joseph County, the South Bend Public Library, and the St. Joseph County Park Board as examples of taxing units which overlap both the Allocation Area and other areas outside the corporate limits of the city. They complain that a taxpayer, such as appellant Helling, who resides outside of the city but within the area of the overlapping taxing units, will indirectly bear a portion of the cost of the redevelopment financing but will not receive any special benefits therefrom. We see no mer-

it to this argument since the overlapping taxing units *will* eventually share the benefits of the higher assessed values in the redevelopment area. We have consistently held that the legislature has the power to create special taxing districts without regard to the boundaries of the municipal or political subdivisions of the state. "[T]he power exercised is a legislative one, and there is no express or implied limitation upon the power found in the constitution." *Department of Public Sanitation v. Solan, supra,* 229 Ind. at 235, 97 N.E.2d at 498.

■ Appellants next contend that since the statute authorizes property within a "redevelopment area" to be reassessed at any time apart from the normal statewide assessments which occur every six years, there is a violation of the uniform and equal taxation requirements of Article 10, Section 1 of the Indiana Constitution. However, it has consistently been held that the uniformity clause protects residents against discriminatory assessment procedures and does not control legislative expenditure decisions. Tax allocation financing does not change the basic rate of assessment and all taxpayers within the territorial limits of each taxing unit continue to be taxed at a uniform rate based upon valuations uniformly arrived at.

The legislature's authorization for greater frequency of assessments in a redevelopment area has a reasonable basis in order to promptly realize the incremental values and increased tax revenues that will meet the periodic debt service on the tax allocation bonds. The mechanics of taxation are entrusted to the sound discretion of the legislature. As we have stated:

"The method of distributing and levying the assessments for the local improvement, so long as there is any reasonable basis for the action, is entirely within the discretion of the legislature." *Book v. Board of Flood Control Commissioners,* (1959) 239 Ind. 160, 171, 156 N.E.2d 87, 93.

In at least six other states, the supreme courts have upheld tax allocation financing statutes against challenges based upon tax uniformity clauses similar to ours. These jurisdictions all recognized that uniformity clauses aim to protect against discriminatory assessment procedures and do not apply to legislative expenditure decisions. As the Supreme Court of Kansas has stated:

"The State contends that the above statutory provisions violate the uniform and equal provisions of Article 11, Section 1, because property not in the redevelopment district bears a proportionately higher burden than does property located within the redevelopment district. The city of Topeka maintains that there is no 'uniform and equal' violation under the Kansas tax increment legislation because redeveloped property *is assessed and taxed at the same rate as similar property outside the redevelopment area.* It is clear that, under the statutes discussed above, redevelopment property is *assessed or valued* in exactly the same manner as similar property outside the redevelopment area. Likewise, the tax rate is identical. Thus under K.S.A.1979 Supp. 12–1770 *et seq.* there is uniformity in both the *valuation* and the *rate* of taxation.

"The only possible nonuniformity or inequality would result from the statutory allocation or distribution of the tax money already collected. Article 11, Section 1, does not require uniformity and equality in the distribution of tax money. That constitutional provision only requires the legislature to provide for a uniform and equal *rate* of assessment and taxation. See, *Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234, 237 (1877). This court has consistently limited the scope of the equality and uniformity requirement to the *levy and assessment* of taxation of property. That constitutional provision has not been made applicable to the *distribution or allocation* of taxes after they are collected.

\*    \*    \*    \*    \*    \*

"We have concluded that K.S.A.1979 Supp. 12–1770 *et seq.* does not violate the uniform and equal requirements of Article 11, Section 1, of the Kansas Constitution. When the rate of property assessment is uniform throughout a taxing dis-

trict, the constitutional mandate of uniform and equal taxation has been fulfilled. The distribution of taxes, once collected, is a matter of legislative discretion so long as it is distributed for a valid public purpose." *State ex rel. Schneider v. City of Topeka*, (1980) 227 Kan. 115, 605 P.2d 556, 561–563.

*See also: Denver Urban Renewal Authority v. Byrne*, (1980) Colo., 618 P.2d 1374; *People ex rel. City of Canton v. Crouch*, (1980) 79 Ill.2d 356, 38 Ill.Dec. 154, 403 N.E.2d 242; *Sigma Tau Gamma Fraternity House Corporation v. City of Menomonie*, (1980) 93 Wis.2d 392, 288 N.W.2d 85; *Metropolitan Development and Housing Agency v. Leech*, (1979) Tenn., 591 S.W.2d 427; *Richards v. City of Muscatine*, (1975) Iowa, 237 N.W.2d 48.

■ Appellants next contend that Ind. Code § 18–7–7–39.1, *supra*, violates federal and state constitutional equal protection and due process guarantees as well as the privileges and immunities clause of Article 1, Section 23 of the Indiana Constitution. They claim that there is no rational basis to award incremental tax revenues to the Department and withhold them from Transpo and that there is an arbitrary classification of taxpayers based upon the location of their property. We do not agree.

■ It is well settled that our legislature has full power and control over the disposition of revenues derived from taxation, except when there exists some constitutional provision to the contrary, and this power extends to such taxes as are raised by the political subdivisions of the state under the authority of the state. *State ex rel. Mass Transportation Authority of Greater Indianapolis v. Indiana Revenue Board*, (1969) 144 Ind.App. 63, 253 N.E.2d 725. It is well settled that equal protection guarantees do not prohibit the legislature from classifying persons and things for tax purposes other than to prohibit arbitrary classifications. The classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation. *Allied Stores of Ohio, Inc. v. Bowers*, (1959) 358 U.S. 522, 79 S.Ct. 437,

3 L.Ed.2d 480; *Indiana Aeronautics Commission v. Ambassadair, Inc.*, (1977) 267 Ind. 137, 368 N.E.2d 1340; *cert. denied*, (1978) 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403; *Welsh v. Sells*, (1963) 244 Ind. 423, 192 N.E.2d 753. Here, the classification has a rational relationship to the legitimate governmental purpose of having the urban renewal project pay for itself and spreading the cost among the overlapping taxing jurisdictions which benefit from the resulting improvements. The legislature has found that the redevelopment of blighted areas is a necessary public action. The classification of taxpayers under these statutes is not arbitrary and is used only to further a legitimate public purpose.

The fact that developers may be able to obtain property at lesser costs in redevelopment areas does not result in the granting of special privileges in violation of equal protection guarantees. We have clearly held that types of municipal financing are not unconstitutional merely because they grant privileges which are not available to all. *Hawkins v. City of Greenfield*, (1967) 248 Ind. 593, 230 N.E.2d 396; *Alanel, supra.*

Appellants further contend that this tax allocation plan diverts revenues from overlapping taxing districts, such as Transpo, and unconstitutionally gives these funds to the Department. We find no due process violation here, since we find the tax allocation financing is a sharing of funds among overlapping taxing districts to accomplish a public purpose which will eventually benefit all the overlapping districts. If no redevelopment projects were undertaken, in the first place, there would be no increased revenues due to increased assessment values and the other taxing authorities would be *completely without* the additional revenue. Since the increased revenues will be the result of the redevelopment project, it is impossible to see how other overlapping taxing districts are being forced to relinquish any revenue to which they would otherwise be entitled. As we pointed out above, the legislature has full power and control over the disposition of revenues derived from taxation as long as the disposi-

tion is not arbitrary and is based upon a reasonable public need. *State ex rel. Mass Transportation Authority of Greater Indianapolis v. Indiana Revenue Board, supra*; 2 McQuillin, Municipal Corporations, §§ 4.14, 4.19. We find no equal protection or due process violations in these statutes.

■ Appellants next argue that the tax allocation financing plan will constitute an impairment of the contracts of the overlapping taxing districts in violation of Article 1, § 10 of the United States Constitution and Article 1, § 24 of the Indiana Constitution. Specifically, they argue that after the tax allocation financing plan goes into effect, the assessed valuation of property within the redevelopment area will be frozen as to their use until the redevelopment is paid for, and therefore a limitation will be placed upon their credit previously pledged in support of repayment of their general obligations. We disagree with this contention.

The same general tax revenues previously available to the other taxing districts will likewise be available after the plan is operative. The portion of the tax revenues allocated to the Department represents an amount generated as a result of increased property valuation due to the redevelopment project. Therefore, since the other taxing districts have not lost the benefit of any tax revenues which would have otherwise been available, no impairment of contracts has occurred. *Denver Urban Renewal Authority v. Byrne, supra.*[2]

■ Appellants finally contend that the tax allocation statutes do not expressly grant the authority to levy the taxes on the increment of valuation in the Allocation Area to the county treasurer and therefore are vague and incomplete in violation of Article 6, § 10 of the Constitution of Indiana. We disagree with this contention.

■ It is clearly established that boards of county commissioners possess only such powers as have been granted expressly by statute and those which must be necessarily implied to execute some expressed power. *K. G. Horton & Sons, Inc. v. Board of Zoning Appeals of Madison County*, (1956) 235 Ind. 510, 135 N.E.2d 243; *Williams v. Willett*, (1936) 102 Ind.App. 193, 1 N.E.2d 664. However, county treasurers have always been empowered to apply predetermined tax rates to the full assessed value of property. Ind.Code § 6–1.1–22–8 (Burns 1978 Repl.). The county treasurer needs no further authority to levy and collect taxes under the questioned statute since the tax allocation financing procedure requires only the application of tax rates to the full assessed value.

■ It is well settled that courts of this state as well as the federal courts have always given due regard to constitutional constraints upon their authority to void statutes. He who raises the question of constitutionality must assume the burden of making it clearly appear and all doubts must fall in favor of the validity of the law. *Short v. Texaco, Inc.*, (1980) Ind., 406

2. Tax allocation financing has been authorized by the legislatures of twenty-two states, in addition to Indiana: Alaska, Arizona, California, Colorado, Connecticut, Florida, Illinois, Iowa, Kansas, Kentucky, Maine, Minnesota, Montana, Nevada, North Dakota, Ohio, Oregon, Tennessee, Utah, Washington, Wisconsin and Wyoming. Appellate courts of ten states have sustained such legislation against constitutional attacks: California, Colorado, Florida, Illinois, Iowa, Kansas, Nevada, Tennessee, Utah and Wisconsin. *See: Redevelopment Agency of the City and County of San Francisco v. Hayes*, (1954) 122 Cal.App.2d 777, 266 P.2d 105, *Denver Urban Renewal Authority v. Byrne*, (1980) Colo., 618 P.2d 1374; *State v. Miami Beach Redevelopment Agency*, (1980) Fla., 392 So.2d 875; *People ex rel. City of*

*Canton v. Crouch*, (1980) 79 Ill.2d 356, 403 N.E.2d 242; *Richards v. City of Muscatine*, (1975) Iowa, 237 N.W.2d 48; *State ex rel. Schneider v. City of Topeka*, (1980) 227 Kan. 115, 605 P.2d 556; *City of Sparks v. Best*, (1980) 96 Nev. 134, 605 P.2d 638; *Metropolitan Development and Housing Agency v. Leech*, (1979) Tenn., 591 S.W.2d 427; *Tribe v. Salt Lake City Corp.*, (1975) Utah, 540 P.2d 499; *Sigma Tau Gamma Fraternity House Corporation v. City of Menomonie*, (1980) 93 Wis.2d 392, 288 N.W.2d 85. In Arizona and Kentucky such legislation was held to violate certain restrictions in the respective state constitutions. *See: City of Tucson v. Corbin*, (1981) Ariz. App., 623 P.2d 1239; *Miller v. Covington Development Authority*, (1976) Ky., 539 S.W.2d 1.

N.E.2d 625; *Alanel, supra.* Appellants have not clearly shown that the tax allocation financing statutes are unconstitutional.

For all of the foregoing reasons, we affirm the decision of the trial court and find that tax allocation financing of redevelopment in blighted areas is constitutionally permissible.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.