

**FILED**

Mar 16 2015, 9:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Eugene M. Feingold
Steven P. Kennedy
Law Offices of Eugene M. Feingold
Munster, IN

ATTORNEY FOR APPELLEE

Gregory Zoeller
Attorney General of Indiana

Kathy Bradley
Deputy Attorney General
Indianapolis, IN

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Redevelopment Commission of the Town of Munster, Indiana, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Indiana State Board of Accounts and Paul D. Joyce, State Examiner of State Board of Accounts, <br> *Appellee-Respondent* | March 16, 2015 <br><br> Court of Appeals Case No. 45A04-1408-PL-404 <br><br> Appeal from the Lake Circiuit Court <br><br> The Honorable Thomas W. Webber, Sr., Judge Pro Tempore <br><br> Cause No. 45D04-1310-PL-92 |

**Mathias, Judge.**

[1] The Munster Redevelopment Commission ("the Commission") appeals the Lake Circuit Court's order entering summary judgment in favor of the Indiana

State Board of Accounts[1] ("the Board") in which the trial court determined that Indiana Code section 36-7-14-28 does not permit the Commission to use tax incremental financing funds to pay for the ongoing maintenance of redeveloped properties.

We affirm.

# Facts and Procedural History

In February 2006, the Commission initiated a project to redevelop a designated area in Munster, which included the Munster Centennial Park and the Munster Community Park. The Commission financed the parks' improvements, in part, using funds acquired through tax allocation financing, also known as tax increment financing[2] ("TIF"). After the redevelopment of the parks was completed, ownership of the parks was transferred from the Commission to the

---

[1] The Indiana State Board of Accounts supervises the financing and accounting practices of Indiana's municipal corporations.

[2] The Indiana Supreme Court has explained the tax allocation scheme in Indiana:

> Under the tax allocation statutes, an impetus towards redevelopment of blighted urban areas is achieved by the reallocation of local tax money in such a fashion that overlapping taxing jurisdictions which benefit from improvements in the renewal areas also share in their cost. The overlapping taxing bodies are all beneficiaries of any post-development revenue increases due to increased assessed values in the development area. Prior to the legislative amendments authorizing tax allocation procedures, the [Commission] alone bore the costs of land acquisition, clearance, and improvements associated with any redevelopment and the overlapping taxing bodies did not share in the public costs of the redevelopment. The tax allocation legislation requires a sharing of those costs by all public bodies benefiting from the redevelopment by requiring all post-development tax revenues attributable to increased assessed values to be paid to the [Commission] until all costs of public improvements associated with the redevelopment have been paid. The taxing bodies remain entitled to all property tax revenues not attributable to the development within the Allocation Area. When the redevelopment costs have been paid, the tax allocation is discontinued and all public bodies share in tax revenues as they did prior to the redevelopment and enjoy the benefits of increased property tax values and revenues.

> *S. Bend Pub. Transp. Corp. v. City of S. Bend*, 428 N.E.2d 217, 219 (Ind. 1981).

Munster Municipal Center Corporation and Parks Department ("the town"). The town allocated in its annual budget a portion of TIF funds to pay for the ongoing maintenance of the parks.

[4] At some point, the town learned that the Board did not consider maintenance of redeveloped properties to be proper use of TIF funds. The town consulted its legal counsel as to whether it was permissible for the town to use TIF funds to maintain the two parks. On May 16, 2013, the town's counsel wrote: "It is our view that the statutes authorize activities of this nature when those activities are in conjunction with the overall redevelopment purposes of the Town." Appellant's App. p. 38. Counsel's memo also stated:

> [I]f the Redevelopment Commission is utilizing the tax levy for general expenses to fulfill [its duty to use the land in the manner that best serves the town] and has concluded that it ought to promote this use of parks and cooperate with the Town, its decision fits squarely within the statutory framework and intent and is certainly incident to its statutory powers and duties.

*Id.*

[5] The town also sought the opinion of the Board. On August 22, 2013, the town received a letter from the Board, which provided:

> The legislature has provided that the expenditure of redevelopment funds for maintenance is to occur only to maintain buildings in the situation where the redevelopment commission has determined that demolition of those buildings is not considered necessary to carry out the redevelopment plan. Such funds cannot be used to maintain park land. This should not be construed as a legal opinion but represents the position we would take in an audit of the Town's records.

Appellant's App. p. 37.

[6] On October 7, 2013, the Commission filed a complaint against the Board seeking declaratory relief. Specifically, the Commission alleged that "[d]isallowing the use of TIF funds for maintenance of a TIF financed redevelopment project . . . will create a substantial additional tax expense to its property owners" and that "[f]ailure to comply with the notification of the State Board of Accounts would place the Town of Munster and its Redevelopment Commission at risk of fines, penalties, and other punitive actions . . . taken by . . . the State Board of Accounts." Appellant's App. p. 3.

[7] On June 2, 2014, the Commission filed a motion for summary judgment. The trial court denied the Commission's motion on August 1, 2014, and granted summary judgment in favor of the Board, finding that that the language in the relevant statutes shows that "the legislature [did not intend] to allow TIF funds to be used for the continued maintenance of properties acquired and improved through the use of TIF funds." Appellant's App. p. 8. The court also noted that the parks in question were now owned by the town, not by the Commission, and that "this is not a matter that falls within I.C. § 36-7-14-22.5 where maintenance of real property owned by the commission can be maintained by [the] commission with TIF funds." *Id.*

[8] The Commission now appeals. The Board cross-appeals.

# I. The Commission's Standing

In its cross-appeal, the Board argues that the Commission did not have standing to bring an action for declaratory judgment because "there is no real or actual controversy." Appellee's Br. at 7. Specifically, the Board contends that the Commission has "shown no injury based on the [Board's] letter stating that the position of the [Board] is that TIF funds may not be used for park maintenance." *Id*. at 8. The Board argues that the Commission's claims that prohibiting the use of TIF funds for the maintenance of the parks will increase property owners' tax obligations and place the Commission at risk of punitive actions are "purely speculative." *Id*.

Standing is defined as having a "sufficient stake in an otherwise justiciable controversy." *Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 945 (Ind. 1999). The point of the standing requirement is to ensure that the party before the court has a substantive right to enforce the claim that is being made in the litigation. *Pence v. State,* 652 N.E.2d 486, 487 (Ind. 1995). Standing is "a significant restraint on the ability of Indiana courts to act, as it denies the courts any jurisdiction absent an actual injured party participating in the case." *Id.* at 488.

The standing requirement obligates courts to act only in real cases and shun action when called upon to engage only in abstract speculation. *Id.* An actual dispute involving those harmed is what confers jurisdiction upon the judiciary:

> For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us.

*Id.* (quotation omitted). Put simply, in order to have standing, the challenging party must show adequate injury or the immediate danger of sustaining some injury. *Ind. Civil Rights Comm'n,* 716 N.E.2d at 945.

[12] In its complaint, the Commission sought declaratory relief allowing it to use TIF funds to maintain the redeveloped parks. Indiana Code section 34-14-1-2 defines a person who may obtain declaratory judgment:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

[13] "In order to obtain declaratory relief, the person bringing the action must have a substantial present interest in the relief sought." *Hibler v. Conseco, Inc.,* 744 N.E.2d 1012, 1023 (Ind. Ct. App. 2001). "The basis of jurisdiction under the Declaratory Judgment Act is a justiciable controversy or question, which is clearly defined and affects the legal right, the legal status, or the legal relationship of parties having adverse interests." *Little Beverage Co., Inc. v. DePrez,* 777 N.E.2d 74, 83 (Ind. Ct. App. 2002).

[14] In the instant case, the Commission asked the trial court to enter a declaratory judgment to determine its authority to use TIF funds to pay for the maintenance of the parks it redeveloped. Because the Commission had already budgeted and utilized TIF funds to pay the maintenance expenses of the parks, and in light of the position the Board took in its letter to the Commission, the Commission has shown that it had a substantial interest in determining whether its use of the TIF funds was proper as well as the immediate danger of injury. *See Ad Craft, Inc. v. Area Plan Comm'n of Evansville & Vanderburgh Cnty.*, 716 N.E.2d 6 (Ind. Ct. App. 1999) (uncertain zoning status of a vacated right-of-way upon which a billboard had been built was a controversy which an area plan commission could seek to resolve via a declaratory judgment action, particularly considering the intricacies of the various zoning and permit issues involved and the legal and economic necessity of a prompt resolution thereof); *Lutheran Hosp. of Ft. Wayne, Inc. v. Dep't of Pub. Welfare of Allen Cnty.*, 397 N.E.2d 638 (Ind. Ct. App. 1979) (hospitals had standing to bring action for declaratory judgment whether they were entitled to reimbursement from county department of public welfare for emergency medical treatment rendered to indigents in light of fact that the expenditures incurred by hospitals in treating the indigents approximated $450,000). We therefore conclude that the Commission had standing to bring its claim for declaratory relief.

# II. Use of TIF Funds

The Commission argues that the trial court erred when it granted the Board's motion for summary judgment. Our standard of review of summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted).

The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County Superior Court No. 1*, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. *Crum v. City of Terre Haute ex rel. Dep't of Redev.*, 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

[17] Our resolution of the issue presented in this appeal hinges on our application of several interrelated sections of Indiana Code title 36-7. We initially observe that statutory interpretation is a question of law reserved for the court and is reviewed de novo. *Ind. Pesticide Rev. Bd. v. Black Diamond Pest & Termite Control Inc.*, 916 N.E.2d 168, 181 (Ind. Ct. App. 2009) (quotation omitted), *trans. denied*. De novo review allows us to decide an issue without affording any deference to the trial court's decision. *Id.* Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.* When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction. *Id.* We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *See Curley v. Lake Cnty. Bd. of Elections & Registration*, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied*.

[18] To determine the intent of the legislature, we examine the statute as a whole and also read sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* (citing *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005)). The best evidence of legislative intent is the language of the statute itself. *U.S. Steel Corp. v. N. Ind. Pub. Serv. Co.*, 951 N.E.2d 542, 552 (Ind. Ct. App. 2011). Thus, we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.* When the language in a statute is ambiguous or uncertain, we may look not only to the language, but also to the nature and subject matter of

the act and the object to be accomplished thereby in ascertaining the legislative intent. *Johnson v. Morgan*, 871 N.E.2d 1050, 1053 (Ind. Ct. App. 2007). If, however, the statutory language is clear and unambiguous on its face, we will give such a statute its apparent and obvious meaning. *U.S. Steel*, 951 N.E.2d at 552.

[19] Indiana Code section 36-7-14-39(b)(2)(J) provides specifically that TIF funds may be used to "[p]ay expenses incurred by the redevelopment commission for local public improvements that are in the allocation area or serving the allocation area. Public improvements include buildings, parking facilities, and other items described in section 25.1(a) of this chapter."

[20] Indiana Code section 36-7-14-11 provides that the Commission shall, in relevant part:

> (6) select and acquire the areas needing redevelopment to be redeveloped under this chapter; and
>
> (7) replan and dispose of the areas needing redevelopment in the manner that best serves the social and economic interests of the unit and its inhabitants.

[21] Indiana Code section 36-7-1-18 defines "redevelopment" as:

> (1) Acquiring real property in areas needing redevelopment.
>
> (2) Replatting and determining the proper use of real property acquired.
>
> (3) Opening, closing, relocating, widening, and improving public ways.
>
> (4) Relocating, constructing, and improving sewers, utility services, offstreet parking facilities, and levees.

(5) Laying out and constructing necessary public improvements, including parks, playgrounds, and other recreational facilities.

(6) Restricting the use of real property acquired according to law.

(7) Repairing and maintaining buildings acquired, if demolition of those buildings is not considered necessary to carry out the redevelopment plan.

(8) Rehabilitating real or personal property to carry out the redevelopment or urban renewal plan, regardless of whether the real or personal property is acquired by the unit.

(9) Investigating and remediating environmental contamination on real property to carry out the redevelopment or urban renewal plan, regardless of whether the real property is acquired by the unit.

(10) Disposing of property acquired on the terms and conditions and for the uses and purposes that best serve the interests of the units served by the redevelopment commission.

(11) Making payments required or authorized by IC 8-23-17.

(12) Performing all acts incident to the statutory powers and duties of a redevelopment commission.

[22] The Commission argues that the "statutory powers granted the [Commission] are broad and include the use of TIF funds for maintenance of redevelopment projects." Appellant's Br. at 6. According to the Commission, Indiana Code section 36-7-1-18's grant of "specific power to *develop* parks and recreational facilities" also includes "the power to perform all actions incidental to its assigned powers, expending funds for the *maintenance* of a project initially financed with redevelopment commission funds[.]" *Id.* at 9 (emphasis added).

[23] The Commission also argues that Indiana Code section 36-7-14-39 should be interpreted broadly to allow for the use of TIF funds to maintain the parks because "[t]he maintenance expenses to which the redevelopment commission applies TIF funds are expenses incurred because of the development."

Appellant's Br. at 11. It acknowledges that the statute does not specifically permit use of TIF funds to maintain redeveloped parks but points to Indiana Code section 36-7-14-39(b)(2)(G), which allows the Commission to use TIF funds to reimburse the town for expenditures for improvements made in the allocation area; section 36-7-14-39(b)(2)(H), which allows the Commission to use TIF funds to reimburse the town for expenses related to "rentals paid by it for a building or parking facility that is physically located in or physically connected to that allocation area"; and section 36-7-14-39(b)(2)(J), which allows the Commission to "[p]ay expenses incurred by the redevelopment commission for local public improvements that are in the allocation area or serving the allocation area. Public improvements include buildings, parking facilities, and other items described in . . . this chapter."

[24] However, the plain language of the statutes leads us to conclude that the trial court's grant of summary judgment in favor of the Board was proper. "It is clearly established that boards of county commissioners possess only such powers as have been granted expressly by statute and those which must be necessarily implied to execute some expressed power." *S. Bend Pub. Transp. Corp. v. City of S. Bend*, 428 N.E.2d 217, 225 (Ind. 1981). Our review of the relevant statutes fails to lead us to any provision that expressly permits the Commission to use TIF funds for ongoing maintenance of properties that have already been redeveloped.

[25] Indiana Code section 36-7-14-39(b)(2) provides that TIF funds "may be used by the redevelopment district only to do one or more of the following," then lists

the allowable uses. Notably absent from the list of permissible uses is general and ongoing maintenance of redeveloped properties. Instead, the language of the statute indicates that TIF funds are to be spent on the construction and installation of improvements, rather than continuing maintenance. The sole provision in the statute specifically authorizing the use of TIF funds for maintenance is section 36-7-1-18(7), which allows TIF funds to be used for the maintenance of buildings on property acquired before redevelopment is complete. Also, Indiana Code section 36-7-14-39 states that "[t]he allocation fund may *not* be used for operating expenses of the commission" (emphasis added).

[26] Our supreme court has observed about the former version of the tax allocation statute:

> When the redevelopment costs have been paid, the tax allocation is discontinued and all public bodies share in tax revenues as they did prior to the redevelopment and enjoy the benefits of increased property tax values and revenues. The legislature passed the tax allocation financing statutes at this time to provide redevelopment commissions with a necessary means to promote development when local governments are facing massive cutbacks in federal assistance and increasingly tight fiscal constraints attributable to the property tax freeze.

*S. Bend Pub. Transp. Corp.*, 428 N.E.2d at 219. This language, along with statutory language instructing the Commission to dispose of the redeveloped properties once redevelopment is complete, *see* Indiana Code section 36-7-14-11(7), is indicative of the General Assembly's intention that TIF funds no longer be used once redevelopment is complete.

The Commission also argues that section 36-7-1-18(12), which gives the Commission the right to perform "all acts incident to the statutory powers and duties of a redevelopment commission" in the statutory definition of "redevelopment" necessarily includes the right to use TIF funds to fund the parks' maintenance. We disagree. The powers granted by this provision are limited to the express statutory powers, or powers incidental to the expressed powers, of the Commission. *See S. Ry. Co. v. Harpe*, 223 Ind. 124, 131, 58 N.E.2d 346, 349 (1944). As we have determined, the Commission's use of TIF funds for the ongoing maintenance of a redeveloped property is not expressly or impliedly permitted in the relevant statutes.[3]

# Conclusion

For all of these reasons, we conclude that the Commission had standing to bring its declaratory judgment. We further conclude that the trial court did not err in determining that Indiana statute does not permit the use of TIF funds for the continued maintenance of completed redevelopment projects.

Affirmed.

Najam, J., and Bradford, J., concur.

---

[3] The Commission also argues that the trial court erred in concluding that the Commission could not use TIF funds to maintain the parks because the parks are no longer owned by the Commission. We find no error here. The transfer of ownership of the parks from the Commission to the town is simply additional evidence that the redevelopment of the parks is complete and the use of TIF funds to maintain the parks is not permitted under the relevant statutes.